No. 95,495

STATE OF KANSAS, *Appellee*, v. DALE M.L. DENNEY, *Appellant.*

(156 P.3d 1275)

Opinion filed April 27, 2007.

*Carl F.A. Maughan,* of Maughan Hitchcock LC, of Wichita, argued the cause and was on the brief for appellant.

*Jeffrey E. Evans,* assistant district attorney, argued the cause, and *Nola Tedesco Foulston,* district attorney, and *Phill Kline,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

NUSS, J.: Dale M.L. Denney appeals the district court's dismissal of his petition for postconviction forensic DNA testing under K.S.A. 2006 Supp. 21-2512 and of various satellite motions. We transferred his appeal from the Court of Appeals pursuant to K.S.A. 20-3018(c).

The issues on appeal, and this court's accompanying holdings, are as follows:

1. Does an actual controversy exist, warranting review? Yes.
2. Did the district court err in dismissing Denney's petition for postconviction forensic DNA testing? No.
3. Did the district court err in dismissing Denney's pro se motions? No.

Accordingly, we affirm the district court.

## FACTS

The procedural history was previously set out in *State v. Denney*, 278 Kan. 643, 101 P.3d 1257 (2004). The summary relevant to the instant matter is as follows:

*"Criminal Acts and Convictions*
"Case No. 87 CR 944

"In 1987, Denney was convicted of rape and aggravated burglary. His sentences were of indeterminate length, and his sentence begin date was January 7, 1988. He was paroled on July 20, 1992, and was on parole at the times of the offenses described below.
"Case No. 93 CR 1343

"Among other things, Denney held a steak knife against the throat of his sister-in-law, P.D., and penetrated her anus with his penis. Because these offenses occurred in October 1992, the new Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq.*, did not yet apply. See K.S.A. 21-4723. Accordingly, Denney was charged with, and eventually convicted of a Class B felony, aggravated criminal sodomy; a Class D felony, aggravated sexual battery; and a Class E felony, aggravated weapons violation. The sentences for aggravated sexual battery (6-20 years) and aggravated weapons violations (2-10 years) were to run concurrent with each other but consecutive to the aggravated criminal sodomy sentence of 30 years to life.
"Case No. 93 CR 1268

"After beating and choking his former girlfriend, A.L., and placing a belt around her throat, Denney penetrated her anus with his penis. Because these offenses occurred on July 16, 1993, the KSGA did apply. See K.S.A. 21-4723. These charges were consolidated for trial with the charges in 93 CR 1343. Denney was

convicted in 93 CR 1268 of aggravated criminal sodomy (severity level 2 person felony), aggravated battery (severity level 4 person felony), aggravated sexual battery (severity level 5 person felony), and aggravated weapons violation (severity level 9 nonperson felony). The accompanying sentences were to run consecutively, for a total of 228 months. They were also to run consecutive to the sentences of 93 CR 1343.

"This court upheld the convictions from both 1993 cases in *State v. Denney*, 258 Kan. 437, 905 P.2d 657 (1995). Additionally, based upon these additional convictions, Denney's parole in 87 CR 944 was revoked on April 15, 1994.

. . . .

*"Motion for DNA testing*

"On September 12, 2002, Denney filed a pro se motion requesting that DNA testing be performed in 93 CR 1268 and 93 CR 1343 pursuant to K.S.A. 2003 Supp. 21-2512. The trial court denied the motion without appointing counsel and without oral argument, noting that the statute expressly limits testing to those cases in which an offender has been convicted of rape or murder and that Denney had been convicted of neither." 278 Kan. at 643-46.

On appeal, this court held that there was no rational basis for allowing postconviction DNA testing for rapists—those convicted of penetration of the female sex organ by the male sex organ when consent is obtained through knowing misrepresentation—and not allowing testing for Denney, who was convicted of aggravated criminal sodomy for penetrating his victims' anuses with his penis through force or fear. *Denney*, 278 Kan. at 656. We held that K.S.A. 2003 Supp. 21-2512 violated the Equal Protection Clause because it failed to include Denney's specific situation.

Rather than nullify the statute, we extended it to include DNA testing for conduct like Denney's. We also remanded to the district court for further determination of whether Denney met the remaining qualifications for testing under the statute. 278 Kan. at 660-61.

On remand, the district court concluded that because the crimes alleged in 93 CR 1343—concerning Denney's sister-in-law—were not reported until months after the episode, no evidence existed that could be submitted for DNA testing. However, evidence was available for testing in 93 CR 1268—concerning Denney's former girlfriend—including rape kit swabs, light blue panties, and one blue washrag. Per the court's order in accordance with 21-2512(c), on March 4, 2005, the evidence was submitted to the Sedgwick

County Regional Forensic Science Center (Center) for testing, along with a recent sample of DNA obtained from Denney by law enforcement. The Center's forensic laboratory division is an ASCLD/Lab accredited laboratory. A lab report of the Center's test results was submitted on May 31, 2005.

On July 21, 2005, Denney filed a motion of "Judicial notice of defendant's DNA expert witness with motion to extend court's July 22nd & 29th, 2005 hearings and to subpoena DNA expert witness to counter State's erroneous DNA profile." In the motion, Denney asserted that he had acquired the services of Dr. Edward Blake of Richmond, California; that Dr. Blake had reviewed the State's DNA profile; and that Blake "stated said profile is erroneous and inconclusive."

Despite Denney's motion to extend, a hearing was held on July 29, 2005. There, the State summarized the Center's lab report: "[T]here's no—absolutely no question that the semen detected in the rectal swab of the victim was the defendant's." While no DNA testing of the victim's light blue panties could be done, semen was detected on the blue washrag and the DNA from the sperm cell fraction obtained there was consistent with Denney's DNA.

The three-page lab report stated that Polymerase Chain Reaction (PCR) DNA analysis had been performed. It specifically provided:

"1. The DNA profile obtained from the sperm cell fraction of the rectal swabs (Q2F2) is a mixture of at least two individuals. The major contributor to this profile is consistent with the profile of Dale M. L. Denney (K1) and the minor contributor is consistent with [A.L.] (K1); therefore, Dale M. L. Denney and [A.L.] cannot be excluded as possible contributors to this profile.

"2. The DNA profile obtained from the sperm cell fraction of the cutting from the blue wash rag (Q5C1F2) is consistent with the profile of Dale M. L. Denney (K3), therefore, Dale M. L. Denney cannot be excluded as the source of this profile. [A.L.] (K1) is excluded as a possible source of this profile.

"3. The DNA profile obtained from the non-sperm fraction of the rectal swabs (Q2F1) is consistent with the profile of [A.L.] (K1), therefore [A.L.] cannot be excluded as the source of this profile. Dale M. L. Denney (K3) is excluded as a possible source of this profile."

The report concluded:

"The probability of selecting an unrelated individual at random from the following population groups who:
"Exhibits a profile that is a potential major contributor to the mixture profile obtained from Q2F2 [rectal swab] and exhibits a matching DNA profile with the profile from Q5C1F2 [blue washrag] . . . is approximately:
  "Caucasian   1 in 120 quintillion.
  "Black       1 in 2.69 sextillion.
  "Hispanic    1 in 185 quintillion."

The State moved to admit the lab report and supporting documentation, including reports of the chain of custody and the recent acquisition of Denney's DNA through oral swabs. The court admitted the report over defense counsel objections of foundation, best evidence, hearsay, and chain of custody.

Defense counsel also objected to Denney's absence from the proceedings and asked the court to reserve judgment on Denney's petition until Denney had the opportunity to hire his own expert to test the DNA evidence. When the court learned that Dr. Blake had not provided a written report nor was he present to testify, it concluded that Denney had no evidence to submit for the court's consideration.

The State argued that per the plain language of 21-2512(f), because the test results were "unfavorable to the petitioner," the court was required to summarily dismiss his petition and was without jurisdiction to do anything else. It also argued that outside of the parameters established in 21-2512, Denney at any time could conduct his own DNA testing at his own expense.

The district court dismissed Denney's petition, stating "the evidence is very clear that this was Mr. Denney's DNA in the one case [93 CR 1268]." It also dismissed his other pro se motions for lack of jurisdiction, e.g., finding that it possessed no evidence of Dr. Blake's opinions and therefore could not consider the possibility of another hearing at that time.

The district court also ruled that the DNA evidence would be preserved and made "available to any reputable scientist that wants to evaluate it." In this vein, it also ruled that if Denney's family hired Dr. Blake or anyone else and they "like his results better," Denney could file a motion to reopen the petition. The court sug-

gested it could be captioned "motion for new trial based on newly discovered evidence."

Denney timely appealed.

## ANALYSIS

*Introduction: the statute at issue.*

Postconviction forensic DNA testing is governed by K.S.A. 2006 Supp. 21-2512. The statute allows an inmate convicted of certain crimes to request DNA testing after conviction and sentencing, which Denney did in September 2002. The statute provides:

"(a) Notwithstanding any other provision of law, a person in state custody, at any time after conviction for murder as defined by K.S.A. 21-3401, and amendments thereto, or for rape as defined by K.S.A. 21-3502, and amendments thereto, may petition the court that entered the judgment for forensic DNA testing (deoxyribonucleic acid testing) of any biological material that:

(1) Is related to the investigation or prosecution that resulted in the conviction;

(2) is in the actual or constructive possession of the state; and

(3) was not previously subjected to DNA testing, or can be subjected to retesting with new DNA techniques that provide a reasonable likelihood of more accurate and probative results.

"(b)(1) The court shall notify the prosecuting attorney of a petition made under subsection (a) and shall afford the prosecuting attorney an opportunity to respond.

(2) Upon receiving notice of a petition made under subsection (a), the prosecuting attorney shall take such steps as are necessary to ensure that any remaining biological material that was secured in connection with the case is preserved pending the completion of proceedings under this section.

"(c) The court shall order DNA testing pursuant to a petition made under subsection (a) upon a determination that testing may produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced.

"(d) The cost of DNA testing ordered under subsection (c) shall be borne by the state or the petitioner, as the court may order in the interests of justice, if it is shown that the petitioner is not indigent and possesses the means to pay.

"(e) The court may at any time appoint counsel for an indigent applicant under this section.

"(f)(1) *If the results of DNA testing conducted under this section are unfavorable to the petitioner*, the court:

(A) shall dismiss the petition; and

(B) in the case of a petitioner who is not indigent, may assess the petitioner for the cost of such testing.

(2) *If the results of DNA testing conducted under this section are favorable to the petitioner*, the court shall:

(A) Order a hearing, notwithstanding any provision of law that would bar such a hearing; and

(B) enter any order that serves the interests of justice, including but not limited to, an order:

(i) Vacating and setting aside the judgment;

(ii) discharging the petitioner if the petitioner is in custody;

(iii) resentencing the petitioner; or

(iv) granting a new trial.

(3) *If the results of DNA testing conducted under this section are inconclusive,* the court may order a hearing to determine whether there is a substantial question of innocence. If the petitioner proves by a preponderance of the evidence that there is a substantial question of innocence, the court shall proceed as provided in subsection (f)(2).

"(g) Nothing in this section shall be construed to limit the circumstances under which a person may obtain DNA testing or other postconviction relief under any other provision of law." (Emphasis added.) K.S.A. 2006 Supp. 21-2512.

## Issue 1: *An actual controversy exists, warranting review.*

As a threshold matter, the State asserts that Denney fails to present an actual case or controversy. Given this absence, the State argues that this court does not have jurisdiction to rule on his appeal.

Jurisdiction is a question of law over which this court exercises unlimited review. *State v. Moody*, 282 Kan. 181, 197, 144 P.3d 612 (2006). When the record discloses a lack of jurisdiction, it is the duty of the appellate court to dismiss the appeal. *State v. Flynn*, 274 Kan. 473, 477, 55 P.3d 324 (2002).

This court discussed the case or controversy requirement in *In re M.R.*, 272 Kan. 1335, 1339, 38 P.3d 694 (2002):

" ' "It is the duty of the courts to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles which cannot affect the matters in issue before the court" ' [Citations omitted.]"

" ' " 'An appeal will not be dismissed as moot unless it clearly and convincingly appears the actual controversy has ceased and the only judgment which could be entered would be ineffectual for any purpose and an idle act insofar as rights involved in the action are concerned.' [Citation omitted.]" ' [Citation omitted.]"

The State specifically contends that even if the district court erred in dismissing Denney's petition, the result would be that *no* evidence of DNA testing would have been considered by the court, and Denney would have remained in prison: "There is functionally no difference between dismissing the petition because the results were unfavorable to defendant versus not admitting the DNA testing results. Either way, the test results no longer have any force or effect in defendant's case."

We note that Denney alleges, among other things, that had his purported hearing rights been enforced, *e.g.*, a right to cross-examine the State's testing witnesses, he may have been able to demonstrate that the results of the DNA results were "inconclusive," as opposed to "unfavorable," to him. Contrast K.S.A. 2006 Supp. 21-2512(f)(3) with (f)(1). He argues that a successful demonstration could have then led to a hearing to determine whether there was a "substantial question of innocence" pursuant to (f)(3). We are persuaded this shows an actual controversy exists and therefore consider Denney's appeal.

Issue 2: *The district court did not err in dismissing Denney's petition.*

Denney argues that the district court's dismissal of his petition for DNA testing on July 29, 2005, was incorrect because the court: (1) failed to allow Denney to confront the individual who conducted the DNA testing; (2) allowed admission of the lab report in violation of the rules of evidence; (3) failed to allow Denney to be present at the hearing; and (4) failed to allow Denney to present a defense. To the extent resolution of these issues necessitates statutory interpretation, this court's review is unlimited. *Denney*, 278 Kan. at 649.

*The right to confrontation and the right to be present*

In accordance with 21-2512, Denney petitioned the district court for postconviction DNA testing in September 2002. In December 2004, after extending the statutory protection to cover Denney's specific conduct, we remanded for the district court to determine if he were otherwise qualified for testing under the stat-

ute. That court found Denney was qualified. After one victim's samples were located, the court ordered the testing of the biological material to proceed because it "may produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced." K.S.A. 2006 Supp. 21-2512(c). The subsequent DNA testing conducted by the Center's accredited lab was obviously unfavorable to Denney: 1 chance in 120 quintillion that another Caucasian met the profile.

The fundamental rule to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained. However, when a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be. *Denney*, 278 Kan. at 650.

When DNA results are unfavorable to a defendant, the statutory procedure is clear: the court *shall* dismiss the petition. K.S.A. 2006 Supp. 21-2512(f)(1) ("If the results of DNA testing conducted under this section are unfavorable to the petitioner, the court . . . [s]hall dismiss the petition."); see also *Haddock v. State*, 282 Kan. 475, 495, 146 P.3d 187 (2006) (statute provides for certain mandatory dispositions and procedural requirements depending upon the results of the additional DNA testing). In this situation, the statute requires no other action, *e.g.*, no hearing, no presentation of witnesses, no cross-examination. Indeed, the statute is silent on how the district court is to receive the DNA testing results. The plain language of the statute only requires a hearing when the results are favorable to the defendant. K.S.A. 2006 Supp. 21-2512(f)(2)(A) ("If the results of DNA testing . . . are favorable to the petitioner, the court shall . . . [o]rder a hearing, notwithstanding any provision of law that would bar such a hearing.").

Nevertheless, Denney argues that the district court erred in failing to afford him certain protections because "introduction of that evidence [test results] to the court is, in effect an extension of the trial against the defendant." He primarily bases his argument upon the constitutional right of confrontation and its handmaiden, cross-examination, citing *Davis v. Alaska,* 415 U.S. 308, 316, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974) ("Cross-examination is the principal

means by which the believability of a witness and the truth of his testimony are tested.").

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Section 10 of the Kansas Constitution Bill of Rights similarly provides that "[i]n all prosecutions, the accused shall be allowed to . . . meet the witness face to face." The question then becomes: is the postconviction forensic DNA testing process created by K.S.A. 2006 Supp. 21-2512 equivalent to a "prosecution?" We answer no.

We find guidance in *United States v. Rondeau*, 430 F.3d 44 (1st Cir. 2005). There, the defendant argued that his Confrontation Clause rights were violated at the hearing to revoke his supervised release after he had served his initial prison sentence. At the hearing, a police detective related statements received from witnesses. Rondeau argued that the statements constituted testimonial hearsay whose admission, absent witness unavailability and his prior opportunity to cross-examine, was prohibited by *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004). The court first noted:

"The Supreme Court has long recognized that a parole revocation hearing, which for present purposes is analogous to a supervised release hearing, . . . is *not* equivalent to a 'criminal prosecution.' *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). Therefore, 'the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations.' " 430 F.3d at 47.

The First Circuit Court of Appeals ultimately rejected Rondeau's argument:

"Given that the Confrontation Clause focuses on 'criminal prosecutions,' we have not found the Clause to be applicable to post-conviction proceedings. [Citations omitted.] *Nothing in Crawford indicates that the Supreme Court intended to extend the Confrontation Clause's reach beyond the criminal prosecution context.*" (Emphasis added.) 430 F.3d at 47.

The First Circuit joined several other circuits in concluding that, because a supervised release revocation hearing is not a "criminal prosecution," *Crawford*—and its right-of-confrontation-based

analysis—does not apply. See *United States v. Hall,* 419 F.3d 980, 985-86 n.4 (9th Cir. 2005) ("Parole, probation, and supervised release revocation hearings are constitutionally indistinguishable and are analyzed in the same manner."); *United States v. Kirby,* 418 F.3d 621, 627-28 (6th Cir. 2005); *United States v. Aspinall,* 389 F.3d 332, 342-43 (2d Cir. 2004); *United States v. Martin,* 382 F.3d 840, 844 n.4 (8th Cir. 2004).

Closely connected with Denney's confrontation argument is another: because the hearing was essentially an extension of the trial, he was entitled to be present. He specifically argues that the hearing "is analogous to a post trial hearing to correct a sentence," citing *State v. Simpson,* 25 Kan. App. 2d 639, 969 P.3d 905 (1998). *Simpson,* however, is distinguishable. There, at a hearing with only the State present, the district court corrected Simpson's sentence by increasing his postrelease supervision from 24 to 36 months to comport with statutory requirements. Simpson specifically argued that the court violated his right to be present at the hearing pursuant to K.S.A. 22-3405. That statute provides in part that "[t]he defendant in a felony case shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by law." The Court of Appeals agreed and reversed and remanded for sentencing with Simpson present.

However, the statute in the instant case, K.S.A. 2006 Supp. 21-2512, does not create a prisoner's right to be present for the court's receipt of unfavorable results of postconviction DNA testing conducted under the statute. We contrast this statute's absolute silence on a prisoner's rights with K.S.A. 60-1507(b)'s even more expansive prisoner's rights. It, like 21-2512, is a postconviction statute. K.S.A. 60-1507(b) provides that unless the prisoner's motion and the case records conclusively show that he or she is entitled to no relief, the court shall cause notice to be served upon the county attorney, grant a prompt hearing, and "determine the issues and make findings of fact and conclusions of law with respect thereto." Even with these prisoner rights, however, the prisoner's attendance at the hearing is still within the court's discretion: "The court *may* entertain and determine such motion without requiring the production

of the prisoner at the hearing." (Emphasis added.) K.S.A. 60-1507(b); see also Rule 183(h) (2006 Kan. Ct. R. Annot. 227); *Lujan v. State,* 270 Kan. 163, 170-71, 14 P.3d 424 (2000).

Inherent in Denney's brief is a suggestion that the mere legislative creation of the right to, and process for, postconviction DNA testing carries attendant rights. We independently observe, for example, that in *State v. Brown,* 278 Kan. 481, 483, 101 P.3d 1201 (2004), we acknowledged that there is no constitutional right to effective assistance of counsel on collateral attacks, *e.g.*, 60-1507 motions, because they are civil, not criminal, actions. Nevertheless, we held that when counsel is appointed pursuant to certain circumstances under state statute, such counsel must demonstrate a modicum of competence. Among other things, Brown's counsel missed the deadline for filing an appeal of the denial of a 1507 motion, and we allowed the filing more than 2 years later under *State v. Ortiz,* 230 Kan. 733, 640 P.2d 1255 (1982). We also noted in passing that to hold otherwise would have left Brown with no remedy whatsoever: "[I]f Brown is not allowed to file his appeal out of time, it is impossible for him to obtain postconviction relief. In turn, without that relief, he cannot pursue an action for legal malpractice." 278 Kan. at 485.

By contrast, in the instant case, although the legislature has created a right, it has carefully limited the right to the procedures established by the statute. And unlike the defendant in *Brown,* Denney still has remedies available, as the legislature acknowledged in subsection (g) of the statute: "Nothing in this section shall be construed to limit the circumstances under which a person may obtain DNA testing or other postconviction relief under any other provision of law." Indeed, the district court invited Denney to avail himself of further testing on his own, even going so far as to suggest the possible caption of a motion based upon different testing results.

*Rules of evidence*

Denney argues that the test results were admitted into evidence in violation of the best evidence rule because the original raw testing data was not introduced; admitted in violation of foundation

requirements because the qualifications of the forensic scientist, the reliability and certification of the testing equipment, and the accuracy and degree of acceptance of the testing techniques were not established; and admitted in violation of chain of custody requirements. His arguments are again based, in large part, upon his assertion that the hearing "is akin to a continuation of the trial in which new evidence is introduced." Because we have held that the hearing is not a continuation of the trial, we reject this basis for his evidentiary arguments.

Moreover, there is no statutory requirement for how the court is to receive the DNA test results. Here, the court accepted the lab report, admitted it into evidence, and essentially allowed it to speak for itself. Finally, we observe that the report was accepted along with a document demonstrating the chain of custody.

*Right to present defense*

Denney also argues that the district court denied him his right to present his defense when it refused to delay its final decision until his expert reviewed the State's findings, prepared a report, or appeared to testify. The cases he cites, *State v. Humphrey,* 252 Kan. 6, 845 P.2d 592 (1992), and *State v. Bradley,* 223 Kan. 710, 576 P.2d 647 (1978), both involve this right at a *trial.* As his quotation from *Bradley* reveals: "It is fundamental *to a fair trial* to allow the accused to present his version of the events so that *the jury* may properly weigh the evidence and reach its verdict." (Emphasis added.) 223 Kan. at 714.

We reject this argument because of our holding that the K.S.A. 2006 Supp. 21-2512 proceeding, whether characterized as a continuation of the original trial or new litigation, is not a criminal prosecution. Moreover, subsection (g) of the statute, and the district court—with its invitation to Denney to obtain his own expert and to file to reopen the petition if his DNA test results were different from the Center's—afford Denney ample opportunity to "present his defense."

In short, rather than a continuation of the trial against the defendant—during which the State obtained multiple convictions, which were in turn upheld by this court on appeal—the legisla-

tively-created procedures evince a laudable, yet limited, effort to provide for postconviction DNA testing under narrow circumstances. Accordingly, based upon the unfavorable DNA test results, the district court was not *required* to hold a hearing. The fact that a hearing was held does not automatically afford Denney protections not warranted by the statute. The district court did not err in dismissing the petition.

Issue 3: *The district court did not err in dismissing Denney's pro se motions.*

Finally, Denney argues that the district court erred in ruling that it lacked jurisdiction to consider his satellite pro se motions. Jurisdiction is a question of law over which this court exercises unlimited review. *Moody*, 282 Kan. at 197.

While Denney does not identify the motion or motions at issue, the district court noted that all the motions were "the same motion in various forms," *i.e.*, Denney's motion of "judicial notice of defendant's DNA expert witness with motion to extend courts July 22nd & 29th, 2005 hearings and to subpoena DNA expert witness to counter State's erroneous DNA profile." The heart of Denney's argument is that the court failed to meet its obligation to make findings of fact and conclusions of law supporting its decision so that appellate review may be accomplished, citing *State v. Moncla,* 269 Kan. 61, 65, 4 P.3d 618 (2000), and Rule 183(j), relating to procedures under 60-1507.

We acknowledge that this court has not limited the Rule 183(j) requirements to motions under 60-1507. See *State v. Hoge,* 283 Kan. 219, 221-22, 150 P.3d 905 (2007) (motions to correct an illegal sentence filed pursuant to K.S.A. 22-3504). However, we reject Denney's argument. *Moncla* concerned a motion for new trial based upon newly discovered evidence, and the district court failed to analyze the credibility of two affiants and the materiality of the claimed new evidence. Here, the district court reviewed and accepted into evidence the three-page lab report, noting from the report that "the evidence is very clear that this was Mr. Denney's DNA in the . . . case." Despite no statutory requirement to do so, it also found that Denney provided no evidence, particularly

anything indicating Dr. Blake's specific opinions. Under K.S.A. 2006 Supp. 21-2512(f)(1), when the test results are unfavorable to the petitioner, the petition shall be dismissed. Under these circumstances, a meaningful appellate review of the district court's decision is easily accomplished.

Because 21-2512(f)(1) requires a dismissal of the petition when the test results are unfavorable, we agree that the petition's satellite motions must therefore be dismissed also. We also agree with the district court's invitation to Denney's counsel: further court action must await either a new petition, or a reopening of the old petition, *e.g.*, if Denney obtains DNA test results different from those of the Center.

We have reviewed the other arguments raised by Denney and conclude they have no merit.

The judgment of the district court is affirmed.