No. 99,041

JACK L. GOLDSMITH, *Appellant*, v. STATE OF KANSAS, *Appellee*.

(255 P.3d 14)

Review of the judgment of the Court of Appeals in an unpublished opinion filed March 6, 2009. Opinion filed July 1, 2011.

*Janine Cox*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*James R. Spring*, deputy county attorney, argued the cause, and *Steve Six*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: This sexual assault case addresses the procedure to be followed when a petition for postconviction testing of multiple items of DNA evidence has been granted.

After the district court granted Jack L. Goldsmith's petition pursuant to K.S.A. 21-2512 for DNA testing of 35 items of evidence, the State conducted testing on only one of the items, a pair of blue sweatpants. The result of the testing was unfavorable to Goldsmith, because it showed DNA consistent with both Goldsmith and the victim, even though Goldsmith's testimony about his activities on the day of the crime made no reference to being in the presence of the victim and the victim said she did not know him. Without granting a hearing, on unilateral request of the State, the district

court dismissed the motion pursuant to K.S.A. 21-2512(f)(1). Goldsmith appealed, and a panel of our Court of Appeals reversed and remanded. We granted the State's petition for review.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 1998, a jury convicted Goldsmith of aggravated kidnapping, aggravated burglary, rape, and aggravated criminal sodomy. The district court imposed a sentence of 1,116 months' imprisonment. The Kansas Court of Appeals affirmed the convictions, and this court denied Goldsmith's petition for review. *State v. Goldsmith*, No. 82,065, unpublished opinion filed April 28, 2000, *rev. denied* 269 Kan. 936 (2000).

Goldsmith filed a request for DNA testing pursuant to K.S.A. 21-2512 in 2004. And, in March 2006, the district court conducted a hearing to establish the particular evidence the State would send to the Kansas Bureau of Investigation (KBI) for testing. Eventually, the parties agreed upon 35 items, and the district court ordered the testing pursuant "to agreement of the parties."

The State filed the KBI's laboratory report with the district court in May 2007. The report indicated that Goldsmith's blue sweatpants had been tested and that one sample was consistent with a mixture of DNA from both Goldsmith and the victim. In addition, the KBI attached a letter that stated it would not provide any further DNA testing in this case. The result consistent with Goldsmith and the victim meant that the testing of additional items would "not be utilizing resources wisely."

On May 25, 2007, the district court filed an order dismissing the action pursuant to K.S.A. 21-2512, finding that the DNA testing was unfavorable to Goldsmith.

Goldsmith timely appealed to our Court of Appeals, arguing that the State breached its agreement when it failed to test all of the items agreed upon and ordered by the court. Goldsmith also argued that his due process rights had been violated, because the State stopped testing without first filing a motion and giving him notice and a right to be heard. The State argued that the district court acted properly pursuant to the clear and unambiguous lan-

guage of K.S.A. 21-2512, which provides that, upon receipt of un-favorable results, the court need only dismiss and allocate costs.

The Court of Appeals' panel ruled that the State had not fully complied with the district court's order for testing and that it was not permitted to determine unilaterally when to stop testing the items agreed upon and ordered. In the panel's view, the State should have filed a motion to amend the order if it wanted to stop the testing before analyzing all of the items; and the district court should have held a hearing on the motion before deciding how to proceed. *Goldsmith v. State*, No. 99,041, unpublished opinion filed March 6, 2009, slip op. at 12.

## ANALYSIS

The issue of whether the district court erred by dismissing Gold-smith's petition after one item of evidence among many ordered to be tested led to an unfavorable result requires us to interpret K.S.A. 21-2512. Statutory interpretation questions are subject to unlimited review. See *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010).

The "fundamental rule governing the interpretation of statutes 'is that the intent of the legislature governs if that intent can be ascertained.' " *Arnett*, 290 Kan. at 47 (quoting *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 378, 22 P.3d 124 [2001]). "The legisla-ture is presumed to have expressed its intent through the language of the statutory scheme it enacted." *Stovall*, 271 Kan. at 378. When the statute's language is plain and unambiguous, the court is bound to apply the legislature's intent, and there is no need for this court to resort to any other rules of statutory construction. *Arnett*, 290 Kan. at 47 (citing *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 [2007], *cert. denied* 129 S. Ct. 36 [2008]; *State v. Manbeck*, 277 Kan. 224, Syl. ¶ 3, 83 P.3d 190 [2004]). Only when the statute is ambiguous on its face, may the court look at the historical back-ground of statute's enactment, the circumstances surrounding its passage, the statute's purposes, and its effect. *Robinett v. The Has-kell Co.*, 270 Kan. 95, 100-01, 12 P.3d 411 (2000).

Goldsmith's due process challenge to the procedure followed by the State and district court also is subject to unlimited review in

this court. See *State v. Wade,* 284 Kan. 527, 534, 161 P.3d 704 (2007).

After analyzing this case under these standards of review, we hold that, rather than unilaterally stopping testing upon receipt of the unfavorable result on the blue sweatpants, the State should have filed a motion to amend the district court's order for testing; the district court should have held an evidentiary hearing on the motion; and Goldsmith should have been present and represented by counsel at such hearing.

· The statute at issue, K.S.A. 21-2512, provides that a person in state custody for murder or rape may petition the district court for forensic DNA testing of any biological material in the State's custody related to his or her prosecution that was either not previously tested or that should be retested because of new DNA techniques. The district court shall order DNA testing upon determination that testing may produce noncumulative, exculpatory evidence supporting a claim of wrongful conviction. The statute further provides, in pertinent part:

"(f)(1) If the results of DNA testing conducted under this section are unfavorable to the petitioner, the court:

(A) Shall dismiss the petition; and

(B) in the case of a petitioner who is not indigent, may assess the petitioner for the cost of such testing.

(2) If the results of DNA testing conducted under this section are favorable to the petitioner, the court shall:

(A) Order a hearing, notwithstanding any provision of law that would bar such a hearing; and

(B) enter any order that serves the interests of justice, including, but not limited to, an order:

(i) Vacating and setting aside the judgment;

(ii) discharging the petitioner if the petitioner is in custody;

(iii) resentencing the petitioner; or

(iv) granting a new trial.

(3) If the results of DNA testing conducted under this section are inconclusive, the court may order a hearing to determine whether there is a substantial question of innocence. If the petitioner proves by a preponderance of the evidence that there is a substantial question of innocence, the court shall proceed as provided in subsection (f)(2)." K.S.A. 21-2512(f).

In addition, subsection (g) of the statute states: "Nothing in this section shall be construed to limit the circumstances under which

a person may obtain DNA testing or other postconviction relief under any other provision of law." K.S.A. 21-2512(g). We have interpreted this subsection to allow petitioners to do further testing on their own or to move for further testing by the State when, for example, testing technology changes. See *State v. Denney*, 283 Kan. 781, 793-95, 156 P.3d 1275 (2007) (acknowledging district court invitation to petitioner to do his own additional testing; suggesting motion should be submitted if results differ); see also *Bruner v. State*, 277 Kan. 603, 606, 88 P.3d 214 (2004) (new testing method requires State to preserve evidence).

Subsection (f) of the statute identifies three possible results of postconviction DNA testing: unfavorable to the petitioner, favorable to the petitioner, and inconclusive. See K.S.A. 21-2512(f); *Haddock v. State*, 282 Kan. 475, 495, 146 P.3d 187 (2006). It requires specific and distinct procedures for each result.

If the result of the DNA testing is unfavorable to the petitioner, the court *shall* dismiss the petition. K.S.A. 21-2512(f)(1)(A); see *Denney*, 283 Kan. at 789 (statutory intent clear; court must dismiss petition); *Haddock*, 282 Kan. at 496 (statute provides for certain mandatory dispositions). The plain language of the statute requires no other action in this situation, "*e.g.*, no hearing, no presentation of witnesses, [and] no cross-examination." See *Denney*, 283 Kan. at 789.

If the DNA testing result is favorable to the petitioner, the district court *must* order a hearing and enter an order that serves the interests of justice. K.S.A. 21-2512(f)(2); see *Denney*, 283 Kan. at 789 (plain language of statute requires hearing); *Haddock*, 282 Kan. at 496 (provisions contemplate full due process hearings; legislature granted court discretion to determine course of action that will serve interest of justice). To be "favorable," the test result need not completely exonerate the petitioner. *Haddock*, 282 Kan. at 501 (district court's demand that result be completely exonerating incorrect).

When the DNA testing result is inconclusive, the district court's subsequent actions are discretionary: "[T]he court may order a hearing to determine whether there is a substantial question of innocence." K.S.A. 21-2512(f)(3); see *Haddock*, 282 Kan. at 499

(unlike mandatory provisions of statute, provisions governing inconclusive results grant court discretion).

In *Goldsmith's* case, there is no question that the result of the test on the single item of evidence was unfavorable. The KBI found DNA consistent with both Goldsmith and the victim on the crotch of Goldsmith's blue sweatpants. Had the district court's order for testing been limited to the blue sweatpants, under K.S.A. 21-2515(f)(1)(A), the court would have been correct to dismiss Goldsmith's petition with no further proceedings. But we are compelled to consider the effect of failing to test the remaining 34 items of evidence agreed upon by the parties and ordered to be tested by the court.

We first observe that, in this case, the State (through the KBI) made the determination that it should stop testing when it found the first unfavorable result. The plain language of K.S.A. 21-2512 does not place the responsibility for such a decision in the hands of the State. Rather, the statute indicates only what a court may do—*i.e.*, the court must dismiss a petition and may assess costs if the results are unfavorable; the court may order a hearing to determine further proceedings if the results are favorable; the court may hold a hearing to determine if there is a substantial question of innocence when the results are inconclusive. K.S.A. 21-2512(f). Nothing in K.S.A. 21-2512 permits the State to take any unilateral action to limit or cease testing previously ordered by the court.

The State nevertheless contends that the one unfavorable result means that the district court did not err by dismissing the petition under K.S.A. 21-2512(f)(1)(A). But this argument ignores the fact that the testing order instructed the KBI to test 35 items of evidence, not just 1 item. A single unfavorable result was not automatically enough for the district court to dismiss the petition when 34 other items of evidence remained untested.

Our decision in *Haddock* is instructive. *Haddock* involved two separate requests for postconviction DNA testing. The first included three items of evidence that were all favorable to the petitioner. The second had at least one item that was unfavorable and two other items not considered because the defendant had not yet made a decision whether the State should move forward with test-

ing of those items. The evaluation of *overall* favorability or unfavorability was critical. We stated: "[W]hen evidence of additional testing on the shoes and shirt are added to the mix, the court will have to make a determination as to whether *the mix* is favorable, unfavorable, or inconclusive." (Emphasis added.) 282 Kan. at 503.

What was true in *Haddock* is also true here. The district court must ultimately consider "the mix" of evidence tested under the order when it determines whether the testing results are favorable, unfavorable, or inconclusive. Unless the order is changed, the statute demands this holistic approach.

If, in this case, the State believed the result obtained on the blue sweatpants to be so adverse to Goldsmith as to make testing of the 34 other items pointless, it was free to move for reconsideration or amendment of the order. As we observed in *Koch Engineering Co. v. Faulconer*, 227 Kan. 813, 830, 610 P.2d 1094 (1980), "[t]he proper manner for a party to test the validity of an order of a court is not to defy the order, but to move to have it set aside in the court which issued it or in some court having supervisory jurisdiction." See also *State, ex rel., v. Engler*, 181 Kan. 1040, Syl. ¶ 2, 317 P.2d 432 (1957) (appropriate method for challenging validity of court order is to challenge order by moving court to set it aside). The State, or the KBI on its behalf, was not free to simply disregard the remainder of the order for testing, nor was the district court free to ignore its earlier provisions without Goldsmith's input.

Rather, on proper motion from the State, the district court should have conducted an evidentiary hearing on the result of the DNA test on the blue sweatpants and should have permitted Goldsmith to be present with counsel. At such a hearing the parties can present their full arguments on why testing on the 34 other items should cease or continue.

In view of all of the foregoing, we affirm the decision of the Court of Appeals, reverse the decision of the district court, and remand to the district court for further proceedings consistent with this opinion.

DAVIS, C.J., not participating.

MICHAEL F. POWERS, District Judge, assigned.