NOT DESIGNATED FOR PUBLICATION

Nos. 125,436
125,958

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DALE M.L. DENNEY,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Submitted without oral argument. Opinion filed March 22, 2024. Affirmed.

*Wendie C. Miller*, of Kechi, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before GREEN, P.J., HILL and CLINE, JJ.


PER CURIAM: In 1993, a jury convicted Dale M.L. Denney of multiple violent sex crimes. Over 20 years later, he requested DNA testing of biological material under K.S.A. 21-2512, which ultimately provided unfavorable results to Denney. In 2020, he moved for additional DNA testing of the same biological material and for the appointment of an expert to perform independent DNA testing. After holding an evidentiary hearing on the motion, the district court denied Denney's requests because Denney did not show there were new DNA testing technologies that could provide more

1

accurate results, and Denney provided no evidence to support his assertion that he needed an independent expert.

Denney contends the district court abused its discretion in denying his motion. But Denny asks us to improperly reweigh the evidence on appeal and provides no support for his assertion that the court mishandled his motion. We see no error in the court's decision and affirm its denial of his motion.

FACTS

In 1993, a jury convicted Denney of multiple violent sex crimes in two cases consolidated for trial. The district court ultimately sentenced Denney to consecutive prison sentences of 228 months and 36 years to life. Our Supreme Court affirmed his convictions on direct appeal. *State v. Denney*, 258 Kan. 437, 905 P.2d 657 (1995).

Since then, Denney has filed multiple postconviction motions. Relevant to this appeal, Denney filed a pro se motion in 2002 requesting DNA testing in both cases under K.S.A. 2003 Supp. 21-2512. See *State v. Denney*, 278 Kan. 643, 645, 101 P.3d 1257 (2004). After the Kansas Supreme Court reversed the district court's summary denial of Denney's motion, the district court ordered testing in 93CR1268. But no testing was ordered in 93CR1343 once the district court concluded no evidence existed for testing in that case. After testing was conducted on various items in 93CR1268, the district court dismissed Denney's petition because the testing was unfavorable to Denney; Denney's DNA was discovered on all the tested items. See *State v. Denney*, 283 Kan. 781, 783-85, 156 P.3d 1275 (2007). The Kansas Supreme Court affirmed the district court's dismissal on appeal because K.S.A. 21-2512(f)(1) required dismissal when test results are unfavorable. 283 Kan. at 795.

Many years later, on March 17, 2020, Denney moved for additional DNA testing and for the appointment of an expert to perform independent DNA testing. In the motion, Denney alleged law enforcement planted his DNA on the tested items, which Denney claimed had "previously tested negative for any biological material from Dale M.L. Denney." Denney requested DNA testing with "RFLP [restricted fragmented length polymorphism] techniques" to identify the biological material found present on the samples. Two months later, he moved for immediate remedy under K.S.A. 21-2512, alleging the district attorney "committed 'Fraud Upon The Court,' by stating that 'the semen detected in the rectal swab of the victim was the defendant's.'"

The district court denied Denney's motion for immediate remedy, finding it lacked jurisdiction to consider Denney's motion because an appeal in the case was docketed. Denney appealed, and this court remanded for further proceedings after finding the district court had jurisdiction to consider Denney's claim. *State v. Denney*, No. 123,331, 2021 WL 5143935, at *2-3 (Kan. App. 2021) (unpublished opinion).

On remand, the district court held a two-day evidentiary hearing on Denney's motions on October 8, 2021, and January 14, 2022. During the hearing, the State presented the testimony of Sarah Gering, a forensic scientist and DNA supervisor at Sedgwick County Regional Forensic Science Center since 2002. After Gering was designated as an expert witness in the field of DNA analysis, she explained she was assigned to work Denney's case when it was submitted to the lab in 2005. At that time, she "was to look at the evidence which was previously examined under a court order." Gering explained she examines evidence in this circumstance "as if it's not been tested before."

Gering explained modern DNA tests were not originally performed as part of Denney's underlying investigation because "DNA was on the horizon." Gering testified the type of testing used then is still relevant today, "but there was not the option to

basically do DNA as we know it at that time." She reviewed a copy of the report issued by Mary Ayers, the chemist working for the Wichita Police Department to compare her processes, inventory, and results.

Once Gering collected the evidence from law enforcement in 2005, she conducted an inventory and examination and then tested the evidence for various body fluids. Gering identified testing "several different exhibits"—including vaginal swabs, rectal swabs, oral swabs, a pair of underwear, and a wash rag. And she testified to performing a DNA analysis on samples she collected from the rectal swabs and cuttings from the wash rag. Then she compared the extracted DNA to the DNA samples collected from Denney and the victim.

Before explaining her results, Gering compared her testing process to the process she believed Ayers used during initial testing. As Gering explained, she conducted a similar test to Ayers', using acid phosphate on the samples to identify seminal fluid, but she followed up with another step using microscopic examination. This process was routine for sexual assault examinations or any sample that may contain seminal fluid.

After Gering used a microscope to confirm semen existed on the rectal swab and wash rag, she analyzed the identified semen for DNA profiles. The rectal swab contained "a mixture of at least two individuals." She explained, "The major contributor to this profile is consistent with the profile of Dale Denn[e]y and the minor contributor is consistent with [the victim]. Therefore, Denney . . . and [the victim] cannot be excluded as possible contributors to this profile." As for the wash rag cuttings, Gering testified the DNA profile obtained was consistent with Dale Denney but not the victim. "Therefore, Dale Denn[e]y cannot be excluded as the source of this profile. [The victim] is excluded as a possible source of this profile." In summary, Gering identified a DNA profile consistent with Denney on both the rectal swab and the wash rag.

4

Gering testified she generated a report with her findings, which she distributed to "the appropriate people," after she completed initial testing in 2005.

The State contacted Gering again after Denney filed the 2020 motion for DNA testing. The State's contact ultimately led to Gering's testimony during the two-day evidentiary hearing. In coordination with Denney's 2020 motion, Gering reviewed the case to determine whether a new technique existed that would provide different information than previous tests. Gering noted Denney's motion specifically requested testing using RFLP techniques. She stated that technology had been used since the 1990s, but she was "not aware of a current forensic laboratory that is applying that technology at this time."

Gering explained that different testing is used for different types of analysis. And she stated the forensic center is "still using the same basic technology" she used when she examined the samples in 2005, despite using "a slightly different chemistry" based on FBI requirements. But she testified she would not expect a "completely different result" if she was to perform the analysis with the new chemistry.

Gering expanded on the differences between the RFLP technology and the technology she used to test the samples. And then she addressed Denney's other request for Y-STR and X DNA (mitochondrial DNA) testing, explaining those tests would not be used in this situation because they do not discriminate within the same family lines. Whereas the testing Gering used made these discriminations.

Based on her expert opinion to a reasonable scientific certainty, Gering testified she did not believe there was a new scientific test that would yield a different result in Denney's case. And when she testified during the second day of the hearing, she stated there were no new technologies that would invalidate her test results from 2005.

During her testimony on the second day, Gering testified a typographical error was found in her lab report, so she issued an amended report in August 2005. The lab reports were introduced into evidence over Denney's objection.

Denney did not offer any evidence at the hearing but submitted a closing argument contending the error in Gering's report "detracts from whatever results that the analysis provided us here." As such, he asked "to get his own DNA expert."

The district court denied Denney's motion. In making its findings, the district court noted Denney's assertions about evidence tampering were "speculative" and lacked support.

ANALYSIS

Denney repeats his argument from below to contend the district court erred when it denied his request for RFLP and Y-STR DNA testing. And he contends the district court erred by failing to address or hold an evidentiary hearing on his request for investigative, expert, and other services under K.S.A. 22-4508. We do not find his arguments persuasive.

*DNA testing under K.S.A. 21-2512*

When a qualified inmate requests DNA testing on biological material, K.S.A. 21-2512 lays out three steps the district court is to follow. *State v. Hernandez*, 303 Kan. 609, 615, 366 P.3d 200 (2016) (delineating three step as [1] notifying the prosecuting attorney; [2] determining whether the material qualifies for testing; and [3] determining whether the testing may produce relevant, noncumulative, exculpatory evidence). At issue here, the second step requires district courts to "'determine whether the biological material sought to be tested qualifies for testing under K.S.A. 21-2512(a)(1)-(3).'" 303 Kan. at 615

6

(quoting *State v. Lackey*, 295 Kan. 816, 820-21, 286 P.3d 859 [2012]). To qualify for DNA testing under K.S.A. 21-2512(a)(3), the statute requires that either (1) the biological material has never been tested or (2) the material could be retested with new and improved techniques. *Lackey*, 295 Kan. at 821-22. Here, Denney requested retesting so he must show the existence of "new DNA techniques that provide a reasonable likelihood of more accurate and probative results." See *Denney*, 278 Kan. at 653-54 (holding Denney's aggravated sodomy conviction authorized him to request DNA testing of untested biological material under K.S.A. 21-2512[a]).

*Standard of review*

A review of Kansas caselaw reveals a motion for DNA testing under K.S.A. 21-2512 is normally handled without a hearing. See *Wimbley v. State*, 292 Kan. 796, 810-12, 275 P.3d 35 (2011); *Lackey*, 295 Kan. at 819-22; *State v. Blake*, No. 123,836, 2022 WL 881825, at *6 (Kan. App. 2022) (unpublished opinion) (finding district court did not err in summarily denying inmate's request for DNA retesting because inmate did not meet burden of showing new technology exists or that retesting would produce more accurate results ); *State v. Mercer*, No. 101,942, 2010 WL 5139877, at *3 (Kan. App. 2010) (unpublished opinion) (finding defendant did not show biological material should be retested because no sample existed to retest). Our courts have held a summary denial of such a motion presents a question of law over which an appellate court has unlimited review. *Wimbley*, 292 Kan. at 809.

But the district court did not summarily deny Denney's motion—rather, the district court held an evidentiary hearing and then it denied Denney's motion upon finding there was no evidentiary basis to support Denney's request. While no party is complaining the district court erred by holding an evidentiary hearing on Denney's motion, it requires a different standard of review because the district court made factual findings after the evidentiary hearing to support its conclusion of law.

7

Typically, when reviewing a mixed question of fact and law, we apply a bifurcated standard of review. We generally review the factual findings under the substantial competent evidence standard, disregarding any conflicting evidence or other inferences that might be drawn from the evidence. The conclusions of law based on those findings are subject to unlimited review. *State v. Dooley*, 313 Kan. 815, 819, 491 P.3d 1250 (2021). This is the standard we will employ for reviewing Denney's claim on appeal.

*The district court did not err in denying Denney's motion for additional DNA testing.*

At the end of the evidentiary hearing, the district court made multiple factual findings. It found Gering was a credible witness who testified contrary to Denney's claim. And based on her testimony, the court found no basis to support Denney's motion for retesting. It also noted that Denney presented no evidence supporting his claim that law enforcement tampered with the evidence.

The district court's findings are supported by substantial competent evidence. Denney made no showing that there were "new DNA techniques that provide a reasonable likelihood of more accurate and probative results" to qualify for retesting under K.S.A. 21-2512(a)(3). He presented no evidence at the evidentiary hearing, and all the evidence that was presented was contrary to his argument.

On the other hand, Gering provided an extensive explanation during her testimony to support her expert opinions that (1) no new scientific test would yield a different result in Denney's case; (2) no new technologies would invalidate her test results from 2005; and (3) the RFLP, Y-STR, and X DNA tests Denney requested are either no longer used or inapplicable to examine the DNA in this case.

On appeal, Denney's argument challenges Gering's credibility as a witness by posing arguments suggesting the tests he requested were applicable, despite Gering's

expert opinion to the contrary. But this court cannot reassess witness credibility. In the same vein, this court does not reweigh the evidence, which Denney seeks to do on appeal, despite failing to introduce any evidence at the evidentiary hearing. See *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

Gering's credible testimony provided substantial competent evidence to support the district court's findings that no new technologies exist to qualify Denney for retesting of the biological material challenged in his motion. The only evidence presented showed the same technology would be used if retested, and any test requested by Denney would be inapplicable to examine the DNA. Additionally, the district court correctly found Denney's evidence tampering claims were speculative because he presented no support for those claims. See *State v. Douglas*, 309 Kan. 1000, 1002-03, 441 P.3d 1050 (2019) (refusing to reject a district court's finding that the party did not meet its burden of proof unless the party challenging the finding proves the district court arbitrarily disregarded undisputed evidence or relied on some extrinsic consideration).

As a result, the district court did not err when it found Denney did not meet his burden of showing he qualified for retesting under K.S.A. 21-2512(a)(3).

*The district court did not err in denying Denney's request for investigative services.*

At the end of his motion for DNA testing, Denney made an "Ex Parte Request for Investigative, Expert & Other Services" under K.S.A. 22-4508. On appeal, he contends the district court overlooked this part of his motion. Denney contends that "[w]ithout such an expert, [he] could not rebut the testimony" of Gering. And, inexplicably, he claims the court failed to hold a hearing on whether Denney should be appointed an expert for additional DNA testing.

The Kansas Supreme Court has interpreted K.S.A. 22-4508 to find it authorizes funds for services if the judge determines, after a hearing, that those services are necessary and the defendant is financially unable to obtain the services. *Landrum v. Goering*, 306 Kan. 867, 874, 397 P.3d 1181 (2017); *State v. Owens*, 248 Kan. 273, 282, 807 P.2d 101 (1991). And the *Owens* court articulated an abuse of discretion standard for reviewing a district court's decision on a request for funds under K.S.A. 22-4508. 248 Kan. at 282.

To begin, no Kansas court has addressed whether K.S.A. 22-4508 can be used in a postconviction motion, and no party has raised that issue here. Therefore, we will assume without deciding that Denney could seek the appointment of an independent expert if he could show such services were necessary. But we point out that this court has denied a postconviction motion for investigative services under K.S.A. 22-4508 because the criminal case was long closed and after finding "[t]he district court had no basis or authority to reopen the criminal case for the sole purpose of approving funds for an investigator." *State v. Fraley*, No. 105,823, 2012 WL 2326006, at *1-2 (Kan. App. 2012) (unpublished opinion); see also *Mebane v. State*, 21 Kan. App. 2d 533, 539, 902 P.2d 494 (1995) ("Kansas has addressed funding for DNA testing only in the context of a pretrial request."). Again, we offer no opinion on the legality of Denney's request because no party has raised it, nor did the district court rule on that issue.

The problem with Denney's argument is the district court found he did not meet his burden to show such services were necessary. First, Denney's motion does not explain or even state what investigative services he was requesting, nor does he specify why the services were necessary to prepare his defense. Instead, he simply requests "Investigative, Expert & Other Services" under K.S.A. 22-4508 and repeats his accusation that law enforcement tampered with the evidence. And at the hearing on Denney's motion, his attorney only argued independent testing was needed because the typo in Gering's report "detracts" from the results of her report.

10

Denney's arguments on appeal to support his request for appointment of an independent expert are essentially the same as those he offers in support of his request for the State to perform additional DNA testing. That is, other than his unfounded assertion that he was denied a hearing on whether additional DNA testing by an independent expert was necessary, he repeats his attacks on Gering's credibility and asks us to reweigh the evidence presented at the hearing. We again find the district court did not err when it determined Denney did not meet his burden of showing he was entitled to the appointment of an independent expert to perform additional DNA testing under K.S.A. 22-4508.

We see no error in the district court's denial of Denney's motion.

Affirmed.