No. 28,904.

THE NATIONAL SAVINGS LIFE INSURANCE COMPANY, *Plaintiff*, v. CHARLES F. HOBBS, as Commissioner of Insurance, etc., *Defendant*.

(284 Pac. 397.)

Opinion filed February 8, 1930.

*Robert C. Foulston* and *W. F. Lilleston,* both of Wichita, for the plaintiff.

*William A. Smith,* attorney-general, *John G. Egan,* assistant attorney-general, and *S. M. Brewster,* of Topeka, for the defendant.

The opinion of the court was delivered by

BURCH, J.: The action is one of mandamus commenced in this court by a life insurance company organized under the laws of this state to compel the commissioner of insurance of this state to certify an insurance policy to be issued by plaintiff. The statute reads as follows:

"Sec. 40-404. Any life insurance company now or hereafter organized under the laws of this state shall deliver to the commissioner of insurance, to be deposited with the state treasurer in addition to the amount of capital required to be deposited, cash or securities of the kind or character in which the company shall be allowed to invest its funds, in an amount equal to the net reserve of all policies and annuity bonds in force in such company, . . .

"Sec. 40-407. After making the deposit prescribed by section 40-404 of this code, the company shall issue policies of insurance or endowment, or annuity bonds, having upon their face a certificate in the following words: 'This policy or annuity bond,' as the case may be, 'is registered and secured by a pledge of bonds or notes and mortgages on real estate deposited with the state treasurer of the state of Kansas in an amount equal to the full legal reserve on this policy,' which certificate shall be signed by the commissioner or his authorized deputy and sealed with the seal of his office. The commissioner of insurance shall prepare and keep such a register . . .

"Sec. 40-408. In order to facilitate the registration of policies as provided in this article, the commissioner of insurance may upon the application of any insurance company designate the register of deeds of the county wherein the main office of such company is located as a deputy commissioner of insurance, who shall have authority to register policies as provided in the preceding section." (Insurance code, Laws 1927, ch. 231.)

The policy, except as presently to be noted, is an ordinary twenty-payment life nonparticipating policy. It was negotiated to a resident of Texas, in which state plaintiff is licensed to transact business. The policy conforms to the laws of that state, has been countersigned by the assistant secretary of the company in Texas, and is deliverable there. Deposit has been made with the state treasurer of this state of approved securities sufficient in amount to comply with the statute. The commissioner of insurance refuses to register and certify the policy because of the following provisions:

"ENDOWMENT COUPON ADDITION. Attached to and forming a part of this policy contract is a six-year endowment coupon. Upon the payment of the regular premiums as provided herein, this endowment coupon shall mature and be payable in accordance with the amount and terms set forth more fully therein.

"SPECIAL ENDOWMENT COUPON. Policy No. 7837. Amount $250.

"Attached and forming a part of policy No. 7837, issued by the National Savings Life Insurance Company of Wichita, Kansas.

"If the insured hereunder be living at the expiration of six years from the date hereof and after the payment in full of the seventh annual premium hereon, this policy then being in full force, the National Savings Life Insurance Company will pay two hundred fifty and no/100 dollars ($250) in cash upon proper surrender of this endowment coupon at its home office in Wichita, Kansas, being the full maturity value of this endowment coupon, to Leonard

F. Bland, the insured, or to any existing assignee of this endowment coupon; or during the continuation of this policy and before the maturity of this coupon as an endowment, the company agrees to pay a like amount within twenty-four hours after receipt of due proofs of the death of the insured under this policy, to the then beneficiary or to any existing assignee of this endowment coupon, provided that if, on the maturity date of this coupon, there be any indebtedness to the company on account of or secured by said policy in excess of the loan value for the seventh policy year, said indebtedness shall be reduced to the amount of the loan value of the policy for the seventh policy year, either by payment in cash by the insured to the company or by the application of so much of the proceeds of this coupon as may be necessary to effect such reduction.

"STOCK PURCHASE OPTION. In accordance with the provisions hereinbefore set forth, the insured shall be entitled to receive in cash two hundred fifty and no/100 dollars ($250) at the maturity of this endowment coupon, or at the option of the insured, the proceeds of this endowment coupon may be used to purchase five shares of the capital stock of the National Savings Life Insurance Company, in the event at that time there shall be stock available.

"Should stock be available for sale by said insurance company, the insured hereunder, together with the holders of similar endowment coupons, shall be given preference over the general public in the right to take and pay for said number of shares of stock by the application of the proceeds of this endowment coupon at its maturity.

"In the event the proceeds of this coupon shall thus be applied to the purchase of the stock of said insurance company at the option of the insured, the full purchase price of said stock shall when received be paid to and become a part of the capital and surplus of the company without any deduction for commissions or otherwise.

"The company hereby further agrees, at and prior to the maturity of this endowment coupon, to do everything that it may lawfully do to make available for purchase by the insured at his option, said stock in said company at the full purchase price of $50 per share.

"It is further agreed that, should the National Savings Life Insurance Company be reinsured, merged or consolidated with any other company, then and in that event the insured shall waive the privilege to purchase stock of such other company at the election of such other company."

The provision of the endowment coupon for payment of $250 on payment of the seventh premium is a provision not common to plaintiff's twenty-payment nonparticipating policies, and the provision relating to purchase of stock in the company is extraneous to an insurance policy. The manifest purpose was to induce prospective insurants to insure with plaintiff, and plaintiff pleads that unless the policy is registered and certified, plaintiff will suffer irreparable loss, in that it will be prevented from meeting the competition of other insurance companies in Texas which issue policies of like tenor.

Texas has a statute on the subject of special inducements. The statute prohibits any insurance company doing business in Texas from discriminating in favor of insurants of the same class and life expectancy, in amount of payment of premium, or rates charged, or dividends or benefits payable; forbids rebates, special favors, and advantages and other inducements to insure not specified in the policy; and forbids giving or offering to give or sell, as an inducement to insurance, or in connection therewith, any stock of any insurance company, or any dividends or profits to accrue thereon, or anything of value whatsoever, not specified in the policy. (Rev. Civ. Stat. Tex., art. 5053.) If, therefore, the company is to compete successfully with other insurance companies in Texas, its special inducement by way of a cash payment with option to purchase stock must appear in the policy.

The insurance code of Kansas not only contemplates that policies of life insurance shall be kept clean, but provides that no special inducement of any kind shall be offered in connection with the sale of policies. The statute reads as follows:

"Sec. 40-232. It shall be unlawful for any insurance company, or any officer or agent thereof, or any other person or persons connected with such company, to sell the stock of any company or corporation in connection with the writing or selling of a policy of insurance, or to offer any special inducement of any kind or character whatsoever in connection with the selling of such policy: *Provided,* That it shall be lawful for any insurance company organized under the laws of this state to sell or provide for the sale of its capital stock with the writing and selling of its policies of insurance if the amount for which such stock is sold, less the commission allowed by law for the sale of stock in insurance companies, is, when received, paid to and becomes a part of the capital and surplus of such insurance company." (Insurance code, 1927.)

The penalty for violation of the statute is fine or imprisonment, or both.

The manifest purpose of this statute was to break up the practice of granting special favors in a business affected with a public interest, in which equality should prevail.

The policy in question was not submitted to the commissioner of insurance for his approval as a policy to be issued or delivered in this state. (Insurance code, 1927, 40-216.) Plaintiff admits that this form of policy is to be used only in Texas. The result is, Texas holders of twenty-payment nonparticipating policies are to receive a bonus of $250 which other policyholders of that class do not receive. The company may issue a variety of forms of policies, but

holders of one form may not be classified geographically for the purpose of conferring special benefits. If so, plaintiff might use one form for Kansas City, Mo., and another form for Kansas City, Kan.; or one form for the company's home city, or other favored locality, and another for the remainder of the state. The result would be the statute against discrimination would be circumvented; and besides that, funds available for distribution to participating policyholders, for reserve, and for dividends to stockholders, would be wrongfully diverted.

The sale of corporate stock is one kind of business, the writing of insurance is another, and the statute prohibits combining the two in one transaction, with two exceptions: First, a domestic corporation may sell its corporate stock in connection with the writing of an insurance policy, in which event property in the shares passes at once, and the policyholder becomes a stockholder. Second, a domestic company may provide for a sale of its stock with the writing or selling of a policy. The purpose of this provision evidently was to allow for arranging time when and terms upon which the policyholder would become a stockholder. The term "sale" has a fixed and definite meaning in the law. A sale effectively transfers property in chattels from one person to another, for a price. To provide for a sale is to make an agreement whereby transfer of property in goods to the buyer will be effectuated. As applied to this case the statute means that the company may make an agreement with the policyholder that on the stated terms the policyholder shall become a stockholder, and unless the agreement does that no sale is provided for.

The endowment coupon does not provide for a sale. Plaintiff's capital stock was paid up in cash before it received permission to do insurance business, and plaintiff has no shares of its capital stock for sale. Plaintiff may not deal in shares of its own capital stock. It may not create new shares without an amendment of its charter by a two-thirds vote of its stockholders. It may not sell newly created shares without license from the insurance commissioner. If new shares should be created the stockholders voting the increase in capital would have preëmptive right to the shares. It may be that some shares of outstanding stock may legitimately dribble in, but the court will not assume the number will be sufficient to sustain a stock-with-policy sale campaign. What plaintiff, through the endowment coupon, offers to a prospective policyholder is this: I

have no existing shares for you; I cannot get existing shares for you; I cannot create new shares to give you; if those having power to create new shares should ever see fit to do so, they may take them all; I may go out of business, and my successor is to be under no obligation to let you have any shares; so I am powerless to sell you any shares, or to provide for a sale whereby you will get shares; but on or before six years from now I will do what I can to make some available to you. The result is, the endowment coupon is an empty gesture, so far as provision for sale of stock is concerned.

Plaintiff contends the duty of the commissioner of insurance is purely ministerial; it is not for him to determine whether a policy is legal or illegal; all he has to do is to see that the policy is secured by proper pledge, and his function is then the same as that of a register of deeds under section 40-408; and in this instance pledge of approved securities is admitted.

The commissioner of insurance is not required to certify the company's advertising matter, or its stock-sale contracts. His legal duty extends no further than certification of policies. In this instance he is asked to certify a multifarious document, in part policy and in part something else. Besides that, the implication of the law is that the certificate is to be placed on the face of policies which conform to the law; and the commissioner may not be compelled to do even a clerical act with respect to any other kind of instrument.

The insurance commissioner is charged with administration of the insurance laws of the state, has general supervision, control and regulation of insurance companies, and has power to make reasonable regulations necessary to enforce the insurance laws. (Insurance code, 1927, 40-102, 40-103.) The extent of this general authority and the limitations upon its exercise need not be defined here. In the discharge of his duty the commissioner must exercise judgment. When a paper is presented to him for certification he may exercise his judgment with respect to the character of the paper, whether it is within or without the class to which the certification statute applies; and in no event will the commissioner be compelled to do any act which will promote breach of statute or of public policy. (*National Bank v. Heflebower*, 58 Kan. 792, 51 Pac. 225; *State, ex rel., v. Younkin*, 108 Kan. 634, 196 Pac. 620.)

The state auditor is required to register municipal bonds. He has

no supervisory power over the issuance of municipal bonds; but for many years this court has sanctioned the practice of determining the validity of bond issues in actions of mandamus to compel the auditor to register bonds which he refuses to register because he thinks they are illegal. (*Railroad Co. v. Nation,* 83 Kan. 237, 109 Pac. 772.)

Plaintiff contends that its form of policy does not need approval by the commissioner of insurance, because it is to be used in Texas (Insurance code, 1927, 40-216); that the policy complies with Texas law; that the insurance laws of Kansas have no extra-territorial effect; and that plaintiff will leave the laws of Kansas behind it at the state line.

There is no question of conflict of laws in this case. Plaintiff is a domestic insurance company, suing a public officer of this state, in a court of this state, to require the officer to do an official act in this state with respect to an insurance policy in this state. The question arises virtually between creature and creator, and the question is not what standing or effect the policy might have in Texas, but what the law of this state requires.

In this connection it may be observed that the statutes of this state may have certain effects in a foreign state. A corporation's capacities and powers are determined by the law of the state which creates it. If a certain power be denied to a corporation by the law of the state creating it, the corporation cannot get that power anywhere else. It is commonly said the powers of a corporation are defined by its charter. In this state corporations are organized under general laws. Plaintiff's charter does not consist simply of the certificate of its incorporators which was filed with the secretary of state. Its charter consists as well of the provisions of the statutes granting and defining corporate power, and it is quite likely that if plaintiff's charter, considered as indicated, authorized it to engage in one class of insurance business only, the courts of Texas would give effect to Kansas law, and would hold the corporation could not engage in any other class of insurance business in Texas. Regulations of manner of exercise of granted power may cease when the law ceases—that is, outside the creating state. The question in such cases is one of interpretation, whether power or mere regulation of exercise of power is involved. But when a question concerning authority of a corporation arises in the incorporating state

between the corporation and an officer of the state, the courts of the state may apply and enforce its own law. (Beale on Foreign Corporations, ch. 1.)

The sections of the insurance code relating to special inducements and certification of policies make no distinction, as some other sections do, between policies to be issued by domestic companies in this state and in other states. Texas may, if it desires, permit special inducements if they are written in contracts of insurance; but the effects of special inducements in policies of plaintiff to be delivered in Texas will not be confined to Texas. Special inducements there will not only be unfair to policyholders of the same class here, but they will affect the finances of the company, a subject in which all stockholders and the state itself are interested.

Disposition of its capital stock by a domestic company is something which relates to organization preliminary to doing insurance business, and to reorganization by charter amendment increasing capital stock. It is something in which the state is peculiarly interested; and as between the state and a corporation which it creates, the state may regulate stock sales. The statute relating to stock-with-policy sales does not authorize use of capital stock as the pot of gold at the rainbow's end.

The writ is denied.

JOHNSTON, C. J., and JOCHEMS, J., dissenting.