**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 9, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

RICHARD GARY MCGUIRE,

      Plaintiff-Appellant,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY;
AMERICAN FAMILY LIFE
INSURANCE COMPANY;
AMERICAN FAMILY STANDARD
INSURANCE COMPANY OF
WISCONSIN,

      Defendants-Appellees.

No. 10-3226
(D.Ct. No. 6:08-CV-01072-JTM-KMH)
(D. Kansas)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TYMKOVICH**, Circuit Judge, **BRORBY**, Senior Circuit Judge**,** and
**MATHESON**, Circuit Judge.

_____

      Appellant Richard Gary McGuire appeals the district court's grant of

summary judgment in favor of Appellees, American Family Mutual Insurance

Co., American Family Life Insurance Co., and American Family Standard

---

      [*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Insurance Co. of Wisconsin (collectively referred to as "American Family"). The district court granted summary judgment to American Family on Mr. McGuire's claims of breach of contract and breach of the implied covenant of good faith and fair dealing following American Family's termination of his agent agreement for rebating a client's life insurance premium payments. We exercise our jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. Factual Background

In granting summary judgment in favor of American Family, the district court relied on various affidavits, depositions, and other attachments submitted in conjunction with American Family's motion for summary judgment and Mr. McGuire's response thereto. Like the district court, we construe the facts contained therein in the light most favorable to Mr. McGuire as the party opposing summary judgment. The following undisputed facts provide background information and/or are material to our disposition of this appeal.

## A. Contract and Company Policy

American Family is a Wisconsin insurance company authorized to do business in Kansas. In March 1989 it entered into a written agent agreement with Mr. McGuire, authorizing him to act as one of its insurance agents operating in Kansas. In January 1993 they entered into a second written agreement which

superceded the earlier agreement and is the agreement on which this action and

appeal are brought. The applicable provisions of the 1993 agreement, which Mr.

McGuire read and understood, provided the agreement would continue until

termination and specifically stated in § 6h:

> 1) Except as provided in paragraph 2) below, this agreement may be terminated by either party with *or without cause by giving written notice* to the other and shall be deemed terminated as of the date specified in that notice. If both parties give notice, the earlier termination date shall control.

> 2) After two years from the effective date of this agreement ... [American Family] will give you notice in writing of any undesirable performance which could cause termination of this agreement if not corrected. [American Family] will not terminate this agreement for those reasons for a period of six months after that written notice. *In no case shall notice of undesirable performance be required prior to termination if the performance in question involves a violation of [§] 4i or any other dishonest, disloyal or unlawful conduct ....*

App. Vol. 1 at 113-14 (emphasis added). With respect to § 4i, Mr. McGuire

agreed:

> To maintain a good reputation in [his] community and to direct [his] efforts toward advancing the interests and business of [American Family] to the best of [his] ability, to refrain from any practices competitive with or prejudicial to [American Family] and *to abide by and comply with all applicable insurance laws and regulations.*

App., Vol. 1 at 112 (emphasis added).


Section 6i of the agreement, entitled "Termination Review Procedure,"

stated, in part, "[i]n the event [American Family] terminates this agreement, you

may request a review in accordance with the Termination Review Procedure then in effect." App., Vol. 1 at 114. Section 7c, entitled "Binding Provisions," provided:

> Rates, rules, regulations and all provisions contained in [American Family's] Agent's Manuals and all changes to them shall be binding upon you. If any inconsistency or ambiguity exists between this agreement and such rate, rule, regulation, provision or other statement or statements, whether written or oral, this agreement shall control.

App., Vol. 1 at 117. Finally, § 7d required the agreement be interpreted and construed in accordance with Wisconsin law.

In addition to terms of the agreement, American Family also provided manuals and other written resource materials to its agents, including a Life Compliance Manual. It provided the Life Compliance Manual in paper form until May 2002, after which it was provided in electronic format. All American Family agents, including Mr. McGuire, had online access to the electronic manual and its updates.[1] With respect to the issue of rebating, the written version of the Life Compliance Manual stated:

Rebating

> AN AGENT MAY NOT GIVE A POLICYOWNER OR PROSPECTIVE CLIENT ANYTHING OF SIGNIFICANT VALUE (OVER $10) AS AN INDUCEMENT TO PURCHASE OR

---

[1] While Mr. McGuire claims he never saw the Life Compliance Manual, he admits he had online access to all American Family materials.

-4-

MAINTAIN INSURANCE WITH AMERICAN FAMILY.

GENERAL RULES *An agent may not pay all or any part of an initial or renewal premium for a policyowner or prospective client.*

*....*

*An agent may not give a policyowner or prospective client any item worth over $10.*

Payment of cash in **any** amount to a policyowner or prospective client is prohibited.

App. Vol. 1 at 142 (italic emphasis added).

In 2002, the electronic format of the Life Compliance Manual provided the following provisions and discussion regarding rebating:

**Rebating**

*You may not give a policyowner or prospective client anything of significant value (over $10) as an inducement to purchase or maintain Life Insurance with American Family.*

*....*

**General Rules**

*You may not pay or loan all or any part of an initial or renewal premium for a policyowner or prospective client*

*....*

FAQ (Frequently Asked Questions)

**Question**

Can I pay a client's premium if they are a little short for a given month, and I know they will be able to pay me back in a short period of time?

**Answer**

No. This is rebating, and is taken very seriously by the Home Office and State Insurance Departments.

**Question**

Can I advance a premium when the Home Office has lost the client's check?

**Answer**

No. *Advancing premiums on behalf of a client is rebating.*

App., Vol. 1 at 143 (italic emphasis added). The electronic version of this section of the Life Compliance Manual underwent minor and nonmaterial revisions during Mr. McGuire's tenure as an agent with American Family.

In addition to American Family's prohibition against rebating, Kansas law prohibits rebating a client's insurance premiums, which Mr. McGuire admitted he knew. As discussed hereafter, several Kansas statutes expressly prohibit agents from rebating premiums and came into effect prior to 1989 when Mr. McGuire took his Kansas licensing examination.

Mr. McGuire also took training courses on insurance law prior to taking his Kansas agent licensing examination and participated in law insurance training courses offered by American Family; during his initial training he learned rebating is illegal. In addition, in an email memorandum dated June 10, 2004, and sent to all the insurance agents in Mr. McGuire's region, American Family instructed its agents to refrain from certain types of "unacceptable" conduct, including rebating, and that discovery of such unacceptable acts would result in immediate and appropriate action, including dismissal.

## B. Mr. McGuire's Rebating Conduct

In November 2000, Mr. McGuire prepared and submitted to American Family an application for the purchase of $250,000 of term life insurance for Matthew Carney – an American Family insurance adjuster and "good friend." Mr. McGuire also provided a document he prepared showing his assumption Mr. Carney would qualify for the Nonsmoker/Select rate of $297.50 annually and submitted Mr. Carney's check in that amount with the application. However, Lori Oakley – the American Family underwriter who reviewed the application – found Mr. Carney ineligible for the Select rate because he lost a sibling to cancer at age ten.[2]

_____

[2] The statement Ms. Oakley recorded online in the underwriting records explained: "Because of Matthew's family history of death before age sixty due to

(continued...)

-7-

While Mr. Carney did not qualify for the Select rate, Ms. Oakley approved his application for a higher premium for the Nonsmoker rate, after which American Family issued life insurance to him at the premium rate of $472.50 rather than the Nonsmoker/Select rate of $297.50 quoted to him by Mr. McGuire. In so doing, it issued a bill for the balance due, which was paid by Mr. McGuire – not Mr. Carney. Thereafter, for the next four years, American Family issued a bill to Mr. Carney for $472.50; each time, Mr. Carney wrote a check payable to American Family for only $297.50 – the price quoted to him by Mr. McGuire – and Mr. McGuire paid the balance.

In December 2005, Connie Kunick – a Life Services Specialist for American Family – received calls from Mr. Carney, who reported the bill for his life insurance reflected a premium due of $472.50 per year instead of the correct rate of $297.50 and explained he received similar erroneous billings over the past five years. After making inquiries into the situation, Ms. Kunick informed Mr.

---

[2](...continued)
cancer in a sibling, Select and Preferred rates are not available." App., Vol. 1 at 175. According to Ms. Oakley, she was also initially concerned about Mr. Carney's elevated protein level from his first urine test, but because his second test showed no such elevation, she approved his application. In turn, Mr. McGuire believed it was an elevated cholesterol test which was of concern and submitted the results of a second cholesterol test to American Family. While Mr. McGuire repeatedly relies on this misunderstanding to oppose summary judgment, it is immaterial or unnecessary for resolution of this appeal, as explained hereafter.

Carney he did not qualify for the Select rate because of his family history of cancer, but he did qualify for the Preferred rate, and his premium would be $352.50 per year if he wished to keep the policy in force, to which he agreed.

Thereafter, American Family conducted an investigation into the payments made by Mr. McGuire on Mr. Carney's behalf. One of its employees, Clint Poeschl, interviewed Mr. McGuire, who admitted he paid a portion of Mr. Carney's life insurance premiums for the past five years because Mr. Carney did not qualify for the Select rate he initially quoted him. Mr. Poeschl also interviewed Mr. Carney, who confirmed that over the last five years he paid only $297.50 annually on his life insurance premiums. Mr. Poeschl then contacted American Family's in-house counsel, who advised him Mr. McGuire's payment of premiums on behalf of an insured constituted rebating prohibited under Kansas law.

Mr. Poeschl then submitted a report of his investigation to American Family's Kansas Sales Director, Rachelle Burton, who, in turn, discussed the matter with American Family's Regional Vice President, Michael Duran. Based on the information obtained during the investigation, Mr. Duran decided to terminate the agent agreement between Mr. McGuire and American Family on grounds Mr. McGuire impermissibly rebated a client's premium payments in

violation of Kansas law.

On January 3, 2006, Ms. Burton and Mr. Poeschl met with Mr. McGuire to advise him of the termination of his agent agreement. Pursuant to § 6h, they also gave him a written letter notifying him of his termination, reminded him of the termination review procedure in § 6i of his agent agreement, and provided him a detailed written summary of that review procedure. Mr. McGuire declined to exercise the review procedure at that time and never formally filed a request for such a review. Ultimately, American Family paid him the termination benefits contemplated by his agent agreement, which totaled over $405,000.

## II. Procedural Background

Following his termination, Mr. McGuire filed his complaint alleging claims of breach of contract and implied covenant of good faith and fair dealing. Following discovery, American Family filed a motion for summary judgment, which the district court granted on August 9, 2010. In granting summary judgment, the district court determined Wisconsin substantive law applied to the terms of the agent agreement but that Kansas insurance law governed the issue of whether Mr. McGuire's payment of Mr. Carney's insurance premiums constituted illegal rebating. After considering the applicable Kansas statutes, the district court held an insurance agent's payment of a portion of the premiums due from a

-10-

customer on an insurance policy sold by that agent constituted rebating in violation of Kansas law.

In so holding, the district court determined Kan. Stat. Ann. § 40-2404(8), which prohibits an agent from rebating premiums, was designed to prohibit discrimination among the same class of individuals purchasing insurance and used an objective standard which assumes a reasonable consumer would view payment or other consideration by an agent as an inducement to purchase insurance. It disagreed with Mr. McGuire's interpretation of the statute as requiring an agent's subjective intent, explaining such an interpretation would discriminate against members of the same class who did not benefit from such rebating. In addition, the district court pointed out American Family's Life Compliance Manual, as well as a retired Kansas Insurance Department official who testified on behalf of American Family, deemed such payments impermissible rebating, regardless of an agent's intent.

By paying a portion of the premium in violation of Kansas law, the district court determined, Mr. McGuire violated his agreement to abide by and comply with all applicable Kansas insurance laws and regulations, and therefore, American Family could terminate his agent agreement. Accordingly, it determined American Family did not breach the agreement and granted summary

judgment to American Family on Mr. McGuire's breach of contract claim.

The district court also ruled in favor of American Family on Mr. McGuire's claim of breach of implied covenant of good faith and fair dealing, explaining the express terms of the agent agreement permitted termination of the agreement in the event he violated state law, which he did when he rebated Mr. Carney's insurance premiums. In so holding, the district court explained it would not "second-guess the business judgment" of the regional vice president who made the decision to terminate the agent agreement based on Mr. McGuire's state law violation.

III. Discussion

A. Issues Presented on Appeal

On appeal, Mr. McGuire asserts the district court erred in granting summary judgment to American Family on his claims of breach of contract and implied covenant of good faith and fair dealing. In making these assertions, Mr. McGuire contends material, disputed facts exist precluding summary judgment, as indicated in his factual allegations: (1) he merely paid the difference on the premiums in an effort to protect both Mr. Carney and American Family while he tried to get American Family to fix its error in billing Mr. Carney for the Nonsmoking rate, rather than the lower Select/Nonsmoking rate; (2) neither he

-12-

nor Mr. Carney intended his payments toward Mr. Carney's premiums to induce Mr. Carney to buy the life insurance; (3) in 2000, when the error happened, he immediately contacted American Family questioning the underwriting decision and the underwriter erroneously told him Mr. Carney's cholesterol tested too high to qualify for the Select/Nonsmoking rate, rather than disclosing that his sister's death from cancer disqualified him from such a rate; (4) he told Mr. Carney in 2001, when he received the second premium bill for $472.50, that American Family made a mistake; (5) he tried by telephone each year to get American Family to bill Mr. Carney at the lower Select/Nonsmoking rate when his premium came due, but American Family took no corrective action; (6) he never saw American Family's Life Compliance Manual, which "categorically condemned" illegal rebating by agents; (7) American Family performed an "incomplete and slanted internal investigation," resulting in its decision to terminate him on inaccurate, misleading, dishonest, and incomplete information, and leading to Mr. Duran's mistaken conclusion Mr. McGuire's behavior constituted "egregious" misconduct; and (8) American Family investigated other agents suspected of rebating and did not terminate some of those agents, including one person in particular who violated an Iowa anti-rebating statute.[3]

_____

[3] As discussed hereafter, we find none of these factual allegations, even if true, dispositive of this appeal. Nonetheless, we note Mr. McGuire has provided no evidence, including any documentation supporting his alleged communications from 2000 to 2005 with Mr. Carney or American Family; nor can he identify with
(continued...)

In addition, Mr. McGuire claims the district court made various legal errors in granting summary judgment. He argues the district court impermissibly determined Kan. Stat. Ann. § 40-2404(8) should be objectively construed as to whether a reasonable consumer would view payment as an inducement to purchase insurance, rather than subjectively viewing the statute to determine his or Mr. Carney's intent. In that regard, he argues American Family must establish his payments enticed Mr. Carney to buy the insurance or that he intended to induce Mr. Carney to purchase insurance by making those payments. Mr. McGuire also argues the district court's objective construction of the statute is inconsistent with the legislative intent or purpose of the anti-rebating statute to avoid discrimination because American Family's rate error in overcharging Mr. Carney discriminated against Mr. Carney. Mr. McGuire also argues that in holding he violated Kan. Stat. Ann. § 40-2404(8) as a matter of law the district court impermissibly relied on nonstatutory materials, consisting of American Family's Life Compliance Manual and the opinion of a retired Kansas Insurance Department official.

As to his other contract claim, Mr. McGuire contends the district court erred when it determined his violation of Kansas law and American Family's

[3](...continued)
any certainty which individuals at American Family he allegedly talked to about Mr. Carney's premium issue.

-14-

contractual right to terminate him "trumped" any obligation it had to deal with him fairly and in good faith. He also claims the district court erred in concluding it should not second-guess Vice President Duran's business judgment in terminating him. He suggests American Family breached its duty of good faith and fair dealing when Vice President Duran unfairly decided to terminate him on an uninformed basis after Mr. McGuire's seventeen years as an agent, as compared with American Family's failure to terminate at least one other Iowa agent who also participated in rebating.

## B. Applicable Law and Analysis

In addressing Mr. McGuire's many contentions, we begin with a discussion of our standard of review and the applicable law and legal principles we apply in interpreting statutes and contracts under state law. In diversity cases, as presented here, federal law determines the propriety of the district court's grant of summary judgment. *See Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1076 (10th Cir. 2007). "We review a district court's decision to grant summary judgment de novo, viewing all facts in the light most favorable to the party opposing summary judgment," which, in this case, is Mr. McGuire. *Grynberg v. Total, S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) (internal quotation marks omitted). We will affirm a grant of summary judgment if no genuine dispute of material fact exists and the prevailing party, American Family, is

entitled to judgment as a matter of law. *Id.* (relying in part on Fed. R. Civ. P. 56(c)). As the nonmoving party, Mr. McGuire may not rest merely on his allegations but must set forth specific facts showing there is a genuine issue for trial. *See U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 958 (10th Cir. 2008).

The parties agree the district court properly applied Wisconsin contract law to the terms of the agent agreement, as contemplated by § 7d of the agent agreement, and Kansas law with respect to the rebating statutes in question. We proceed under the same assumption. In applying Wisconsin and Kansas law, "[t]his court must determine issues of state law as we believe the highest state court would decide them." *Clark v. State Farm Mut. Auto. Ins. Co.,* 319 F.3d 1234, 1240 (10th Cir. 2003). "Although we are not bound by a lower state court decision, decisions of a state's intermediate appellate courts are some evidence of how the state supreme court would decide the issue, and we can consider them as such, even if they are not binding precedent under state law." *Id.* (internal quotation marks omitted).

In addressing the terms of Mr. McGuire's agent agreement and applying Wisconsin law, "[w]e review de novo a district court's application of state law to interpret a contract." *Deer Crest Assoc. I v. Avalon Deer Valley*, 566 F.3d 1246, 1248 (10th Cir. 2009). Under Wisconsin law, "[w]here a party's claims rest on [a]

-16-

contract, we must apply the contract's language."  *Brew City Redev. Group v. The Ferchill Group*, 714 N.W.2d 582, 585-86 (Wis. Ct. App. 2006).  A complaint states a claim for breach of contract under Wisconsin law when it alleges: (1) a contract creating obligations flowing from defendant to plaintiff; (2) a breach of those obligations; and (3) damages from the breach.  *See id*. at 588.

In this case, §§ 4i and 6h of the agent agreement expressly state no notice of undesirable performance is necessary prior to termination for unlawful conduct, including a violation of all applicable insurance laws and regulations.  Therefore, if Mr. McGuire violated Kansas law by participating in the illegal practice of rebating, American Family may, under the agent agreement, terminate the contract without breaching the terms of the contract.  Like the district court, we look to Kansas law and its statutes to determine if Mr. McGuire's conduct in paying Mr. Carney's premiums violated Kansas law and thereby his agent agreement.

Under Kansas law, "[i]nterpretation of a statute is a question of law," and "*[t]he most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained*."  *Fisher v. DeCarvalho*, ___ P.3d ___, 2011 WL 2507833, at *4 (Kan. Ct. App. June 24, 2011) (slip. op.) (emphasis added).  "The legislature is presumed to have expressed its intent

-17-

through the language of the statutory scheme it enacted." *Goldsmith v. State*, 255 P.3d 14, 17 (Kan. 2011) (internal quotation marks omitted). "When construing statutes to determine legislative intent, ... courts must consider various provisions of an act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony if possible." *State v. Casey*, 211 P.3d 847, 850 (Kan. App. 2009). When attempting to "ascertain the legislature's intent through the statutory language it employs," courts must give "ordinary words their ordinary meaning." *Fisher*, 2011 WL 2507833, at *4 (internal quotation marks omitted).

Where the statute is plain and unambiguous, statutory construction is unnecessary. *See Goldsmith*, 255 P.3d at 17; *Fisher*, 2011 WL 2507833, at *4. Only if a statute's language or text is unclear or ambiguous are the canons of construction or legislative history applied to construe the legislative intent. *See Fisher*, 2011 WL 2507833, at *4. "[W]e interpret state laws according to state rules of statutory construction," *Finstuen v. Crutcher*, 496 F.3d 1139, 1148 (10th Cir. 2007), and "we are permitted to construe ambiguous state statutes and to extrapolate the true meaning of such statutes according to traditional rules of statutory construction." *Phelps v. Hamilton*, 59 F.3d 1058, 1070 (10th Cir. 1995). Thus, if "the statute is ambiguous on its face," we may "look at the historical background of [the] statute's enactment, the circumstances surrounding its passage, the statute's purposes, and its effect." *Goldsmith*, 255 P.3d at 17.

-18-

With these principles in mind, we turn to the Kansas rebating statutes on which the parties rely. Kan. Stat. Ann. § 40-2403 provides: "[n]o person shall engage in this state in any trade practice which is defined in this act as, or determined pursuant to [Kan. Stat. Ann.] 40-2406, to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." Section 40-2404, on which the crux of the district court's decision and this appeal rests, states, in part:

> **40-2404. Unfair methods of competition or unfair and deceptive acts or practices; title insurance agents, requirements; disclosure of nonpublic personal information; rules and regulations.**
>
> *The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:*
>
> ....
>
> (7) *Unfair discrimination.* (a) *Making or permitting any unfair discrimination between individuals of the same class and equal expectation of life in the rates charged for any contract of life insurance* or life annuity or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of such contract.
>
> ....
>
> (8) *Rebates.* (a) Except as otherwise expressly provided by law, knowingly permitting, offering to make or making any contract of life insurance, life annuity or accident and health insurance, or agreement as to such contract other than as plainly expressed in the insurance contract issued thereon; *paying, allowing, giving or offering to pay, allow or give, directly or indirectly, as inducement to such insurance, or annuity, any rebate of*

-19-

*premiums payable on the contract, any special favor or advantage in the dividends or other benefits thereon, or any valuable consideration or inducement what[so]ever not specified in the contract*; or giving, selling, purchasing or offering to give, sell or purchase as inducement to such insurance contract ... any stocks, bonds or other securities of any insurance company ... *or anything of value whatsoever not specified in the contract*.

Kan. Stat. Ann. § 40-2404 (emphasis added).

In construing the ordinary words of these statutes and applying Kansas's most fundamental rule in determining the legislature's intent from those words, it is clear the legislature's intent in passing §§ 40-2403 and 40-2404 was to prevent or prohibit unfair discrimination practices in the business of insurance.[4]  This includes an agent's rebate payment of an insured's premium, which the legislature deemed an "unfair method[] of competition and unfair or deceptive acts or practices in the business of insurance."  Kan. Stat. Ann. § 40-2404.  We further

_____

[4]  The intent of these statutes is clear from the legislature's language. Moreover, as the district court points out, the Kansas Supreme Court, in discussing an earlier version of an anti-rebating statute, observed that "[t]he manifest purpose of this statute was to break up the practice of granting special favors in a business affected with a public interest, in which equality should prevail." *Nat'l Sav. Life Ins. Co. v. Hobbs*, 284 P. 397, 399 (Kan. 1930).  As explained in a 1992 Kansas Attorney General opinion, insurance rate regulation in Kansas is predicated on the need "to avoid discrimination as between policyholders" and such statutes specifically forbid "unfair discrimination."  Kan. Atty. Gen. Op. No. 92-150, 1992 WL 613513, at **2-3 (Kan. A.G. 1992) (discussing Kan. Stat. Ann. § 40-941 (fire insurance) and § 40-1122 (casualty insurance)).

note § 40-2404(8), which specifically prohibits rebating, is directed only at the insurance agent and not the insured. While the statute suggests an agent's impermissible payment of a premium constitutes an inducement to the insured to purchase the insurance, it does not address nor require proof of an individual agent's intent, motive, or reason for paying the premium, nor proof such payment actually enticed the insured to purchase the insurance. Instead, a full and fair reading of the statute demonstrates the legislature intended a blanket prohibition on rebating, as further demonstrated by the catch-all phrases in § 40-2404(8) which strictly prohibit "any special favor or advantage in the dividends or other benefits thereon"; "inducement what[so]ever not specified in the [insurance] contract"; or "anything of value whatsoever not specified in the [insurance] contract."

In arguing the statute applies a subjective standard with regard to an agent's intent or the insured's reason for purchase, Mr. McGuire provides no useful analysis with respect to the plain and ordinary words of the statute to convince us his assertion is correct, other than to provide a definition of the word "inducement" and contend the use of that word alone in § 40-2404 requires a subjective standard. As Mr. McGuire points out, "inducement" is defined in Black's Law Dictionary as "[t]he act or process of enticing or persuading another person to take a certain course of action." *Black's Law Dictionary* at 790 (8th ed.

2005).  It is also defined as "[t]he action of inducing or moving by persuasion or influence."  *Oxford English Dictionary* (2010 online ed.).  However, the use of the word "inducement" alone does not require an examination of an agent's subjective intent.  One may logically presume an agent's act of paying a premium, or any portion thereof, would directly or indirectly persuade or entice an insured to purchase insurance, regardless of the agent's actual motives in making such a payment.[5]

As the district court explained, interpreting the statute more broadly to

---

[5]  We note the first clause in § 40-2404(8) uses the adverb "knowingly" to modify the verbs "permitting, offering to make or making" when prohibiting agents from making any contract other than plainly expressed in the insurance contract.  "Knowingly" implies subjective intent.  However, it is arguable whether the Kansas legislature also intended "knowingly" to modify the verbs "paying, allowing, giving or offering to pay, allow or give" in the next clause of § 40-2404(8) with regard to an agent's rebating of a client's insurance premium.  Related statutes § 40-2404(14) and § 40-966, which use almost identical language as the second clause and prohibit title and fire insurance agents from rebating title insurance, do not use the adverb "knowingly."  However, in this instance, it does not matter if Mr. McGuire knowingly paid a portion of Mr. Carney's premium, as he admitted he made such payments.  And even if "knowingly" modifies "paying" in the second clause, under the ordinary rules of grammar and principles of parallel construction, it is arguable "knowingly" does not modify the noun "inducement" contained in the same clause.  *But see Flores-Figueroa v. United States*, 129 S. Ct. 1886, 1890 (2009) (explaining "knowingly" applies to all subsequently listed elements of a crime).  However, even if "knowingly" somehow modifies "inducement," so that the agent must pay a premium as a knowing inducement, it is logical to presume any agent who pays a premium for any reason would know or assume his payment would induce, directly or indirectly, an insured to purchase the insurance, regardless of what the agent's actual motive is in making such a payment.

-22-

inject subjective intent as an exception to illegal rebating would undermine the legislature's obvious intent to prevent discrimination between insureds in the same class. *See Pieren-Abbott v. Kansas Dept. of Rev.*, 106 P.3d 492, 497 (Kan. 2005) (holding Kansas statutes must be construed to avoid unreasonable results). Such an interpretation would also defeat what we perceive as the statute's blanket prohibition against rebating for the purpose of preventing such discrimination. Thus, we presume, as did the district court, that the legislature intended an agent's payment of an insured's premium to be an "inducement" to purchase insurance, regardless of any other reasons, direct or indirect, an agent might want to pay an insured's premium or whether the payment in fact entices the particular insured in question. This objective standard logically presumes a reasonable, objective person would deem such a payment an "inducement" to purchase insurance.

In examining *in pari materia* the other Kansas statutes relating to insurance rebating, none provide an exception to the prohibition on rebating or otherwise suggest a subjective standard applies in determining if an agent's payment of a premium constitutes rebating or an inducement. *See* Kan. Stat. Ann. §§ 40-232, 40-966, 40-2405, 40-2406, 40-2407, 40-3513, 40-3515, 40-4909(a)(7), and 40-

4910.[6]  Indeed, the Kansas legislature considers rebating such serious misconduct it ensures insurance agents who engage in such conduct are mandatorily subject to cease and desist orders and possibly subject to monetary fines and/or suspension or revocation of their agent's licenses.  *See* Kan. Stat. Ann. §§ 40-2407 and 40-4909.  These statutes provide no statutory exemption premised on the agent's subjective intent in paying an insured's premium, no matter how innocent or laudable such intent may be.  *See State v. JC Sports Bar, Inc.*, 861 P.2d 1334, 1339 (Kan. 1993) (holding the legislature may forbid the doing of an act without regard to intent or knowledge, and stating it is incumbent on the courts to give such a statute effect, although the intent of the actor may have been innocent).

---

[6] *See* Kan. Stat. Ann. § 40-232 (making it unlawful for an insurance agent to sell stock in connection with selling insurance or to "offer any special inducement of any kind or character whatsoever in connection with the selling of such policy"); § 40-966 (using similar language as § 40-2404(8) with respect to fire insurance); § 40-2405 (providing Commissioner with power to investigate agents involved in any unfair method of competition or unfair or deceptive act); § 40-2406(a)-(b) (providing Commissioner investigating agent acts under § 40-2404 with discretion to serve charges, conduct a hearing, and assess costs); § 40-2407(a)(1)-(3) (requiring Commissioner to order cease and desist orders against agents committing unfair or deceptive practice and giving Commissioner discretion to impose monetary penalty and/or to revoke or suspend an agent's license); § 40-3513(a) (using language similar to § 40-2404 with respect to mortgage insurance agents and prohibiting rebating by payment of any part of premiums); § 40-3515 (preventing mortgage guaranty insurance company or affiliate from paying rebates); § 40-4909(a)(7) (providing Kansas "Uniform Insurance Agents Licensing Act" and stating Commissioner may suspend, deny, refuse to renew, or revoke agent license if agent committed any insurance unfair trade practice in violation of § 40-2404); and § 40-4910(f) (requiring insurance agents making a commission from making payment which violates any provision of § 40-2404).

-24-

Even if we believed the statute was ambiguous after examining the statutory scheme enacted, we may consider the interpretation given the statute by those charged with enforcing it. *See Phelps,* 59 F.3d at 1070. While Kansas law applies "[n]o significant deference" to an agency's interpretation or construction of a statute, *see In re Lemons*, 217 P.3d 41, 42 (2009), we may nevertheless consider it for its persuasive value even if it is not binding. *See Graham v. Dokter Trucking Group*, 161 P.3d 695, 701 (Kan. 2007). In 1983, the Kansas Insurance Commissioner issued an insurance bulletin concerning § 40-2404, explaining it prohibits title insurance agents from paying, either directly or indirectly, a rebate of any rate incident to issuance of insurance.[7] KS Bulletin No. 1983-13 (June 29, 1983). In the same bulletin, the Commissioner stated: " THE KEY IS WHETHER THE COMPANY [or agent] HAS PROVIDED OR ARRANGED FOR OR AN INSURED HAS RECEIVED ANY SPECIAL FAVOR OR ADVANTAGE THAT IS NOT GENERALLY AVAILABLE TO OTHERS." *Id.* In this instance, Mr. McGuire's payment of Mr. Carney's premium was a special favor or advantage not generally available to others and therefore constitutes discriminatory rebating, as interpreted by the Kansas Insurance Commissioner charged with enforcing § 40-2404.

---

[7] Kan. Stat. Ann. § 40-2404(8) and (14) both prohibit rebating; subsection (14) is almost identical in language to subsection (8) but prohibits rebating with respect to title insurance.

Although the parties have not provided, nor have we found, any on-point Kansas case law, regulatory or administrative laws, or legislative history to definitively resolve the rebating issue presented, our review of Kansas anti-rebating statutes and the interpretation given to § 40-2404 by the Kansas Insurance Commissioner leads us to agree with the district court and conclude § 40-2404(8) applies an objective standard. As a result, it does not matter, as Mr. McGuire contends, whether he intended to induce Mr. Carney to buy insurance or what his or Mr. Carney's subjective intention, reason, motive, or state of mind was at the time of the premium payments or what their post-payment assertions are. For this reason, Mr. McGuire's allegations of disputed fact are not material to our summary judgment disposition, including his allegation he paid Mr. Carney's premiums in an effort to protect both Mr. Carney and American Family because of the underwriting error made in overcharging Mr. Carney for his premiums and the lack of corrective action. Even if these allegations are true, they do not change the fact Mr. McGuire illegally rebated Mr. Carney's premiums in violation of Kansas law and his agent agreement. We arrive at this conclusion even if, as Mr. McGuire requests, we decline to consider American Family's Life Compliance Manual categorically prohibiting rebating, which he claims he never saw, or the opinion of a retired Kansas Insurance Department official, who testified as an expert on behalf of American Family and stated an agent's payment

of insurance premiums is an inducement, regardless of the agent's intent.[8]

Given Mr. McGuire violated the law, American Family could terminate his agent agreement without prior notice, as provided by § 6h of that agreement. Therefore, American Family did not breach the agreement, as alleged by Mr. McGuire in his breach of contract claim, and the district court properly granted summary judgment to American Family on that claim.

We next turn to Mr. McGuire's argument American Family breached the

---

[8] While we dispose of this appeal based on Kansas's rebating statutes, we find Mr. McGuire's statement he never saw the Life Compliance Manual, which categorically prohibits rebating, extremely self-serving, given his seventeen-year tenure with the company; his attendance since 1989 at various company training courses, including learning activities on Life Compliance; his admitted electronic access to American Family materials; and the provision in § 7c of his agent agreement, entitled "Binding Provisions," which provides:

> *Rates, rules, regulations and all provisions contained in [American Family's] Agent's Manuals and all changes to them shall be binding upon you.* If any inconsistency or ambiguity exists between this agreement and such rate, rule, regulation, provision or other statement or statements, whether written or oral, this agreement shall control.

App., Vol. 1 at 117 (emphasis added). Even where an affidavit or deposition is based on personal knowledge and sworn, we have said it may be insufficient to create a triable issue of fact if, as here, it is merely self-serving and not otherwise supported by the record. *See Salguero v. City of Clovis*, 366 F.3d 1168, 1177 n.4 (10th Cir. 2004) (relying on *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995)). As the district court indicated, the Life Compliance Manual as well as the 2004 email to all agents categorically prohibited rebating, which Mr. McGuire violated in addition to Kansas rebating law.

implied covenant of good faith and fair dealing when it terminated him. As Mr. McGuire contends, Wisconsin law presumes "'[e]very contract implies good faith and fair dealing between the parties to it' and mere compliance with the form but not the substance of a contract breaches that covenant of good faith." *Brew City*, 714 N.W.2d at 589 (quoting *Bozzacchi v. O'Malley*, 566 N.W.2d 494, 495 (Wis. Ct. App. 1997)). In Wisconsin, whether a party has breached its implied duty of good faith is ordinarily a question of fact. *See Wis. Nat'l Gas Co. v. Gabe's Constr. Co.*, 582 N.W.2d 118, 122 n.6 (Wis. Ct. App. 1998). However, where one of the contracting parties complains of acts specifically authorized in the agreement, there is no breach of good faith and fair dealing as a matter of law. *See M&I Marshall & Ilsley Bank v. Schlueter*, 655 N.W.2d 521, 525 (Wis. Ct. App. 2002). In Wisconsin, "[b]ehaviors recognized as a lack of good faith are: evasion of the spirt of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of power to specify terms, and interference with or failure to cooperate in the other party's performance." *Tang v. C.A.R.S. Protection Plus, Inc.*, 734 N.W.2d 169, 183 (Wis. Ct. App. 2007) (internal quotation marks omitted). Here, Mr. McGuire suggests American Family evaded the spirit of the bargain when it unfairly terminated him after seventeen years as an agent and failed to terminate at least one other agent who also participated in rebating.

In applying Wisconsin law, it is clear the agent agreement clearly stated American Family had the right to terminate Mr. McGuire's agent agreement without notice if he failed to abide by and comply with all applicable insurance laws and regulations. Hence, when Mr. McGuire impermissibly participated in rebating by paying a portion of Mr. Carney's insurance premiums he failed to abide by or comply with the applicable Kansas insurance laws and regulations. Mr. McGuire's violation of state law was specifically authorized in the agreement as grounds for termination, and therefore, under Wisconsin law, no breach of the implied covenant of good faith and fair dealing occurred as a matter of law. As explained by one Wisconsin court, "it would be a contradiction in terms to characterize an act contemplated by the plain language of the parties' contract as a 'bad faith' breach of that contract." *See M&I*, 655 N.W.2d at 525 (internal quotation marks omitted). As a result, we need go no further in examining any other facts in determining if American Family breached the implied covenant of good faith and fair dealing.[9]

---

[9] Given our determination American Family's termination of Mr. McGuire's agent agreement did not breach the covenant of good faith and fair dealing as a matter of law, we need not address Mr. McGuire's unsupported claim American Family performed an "incomplete and slanted internal investigation," resulting in his termination on inaccurate, misleading, dishonest, and incomplete information, as well as its mistaken conclusion his behavior constituted "egregious" misconduct. Similarly, it is unnecessary for us to consider the issue of American Family's business judgment in leaving each termination decision up to the vice president of each of its regions or the fact, as American Family points out, seven other American Family agents were terminated for rebating, and

(continued...)

IV.  Conclusion

For the foregoing reasons, we **AFFIRM** the district court's summary judgment decision in favor of American Family on Mr. McGuire's claims of breach of contract and breach of the implied covenant of good faith and fair dealing.

> **Entered by the Court:**
>
> **WADE BRORBY**
> United States Circuit Judge

---

[9](...continued)
another agent, whom Mr. McGuire concentrates on and who was not terminated for rebating, was located in another region where a different vice president made the decision based on different circumstances, including an Iowa, not Kansas, statute.