(124 P.3d 516)

No. 93,377

JACK L. GOLDSMITH, *Appellant*, v. STATE OF KANSAS, *Appellee*.

Opinion filed December 23, 2005.

*Janine Cox*, capital appellate defender, for appellant.

*James R. Spring*, deputy county attorney, and *Phill Kline*, attorney general, for appellee.

Before RULON, C.J., GREENE, J., and BRAZIL, S.J.

RULON, C.J.: Jack L. Goldsmith appeals the district court's summary dismissal of the motion for DNA testing, contending the district court erred in applying the 1-year limitation of K.S.A. 2004 Supp. 60-1507(f) to motions brought under K.S.A. 2004 Supp. 21-2512. We reverse and remand for further proceedings.

## Underlying Facts

The long and sordid history of this case does not need to be recounted here. However, a brief overview of the procedural history of this case may prove illuminating.

In October 1997, Goldsmith was charged with aggravated kidnapping, aggravated burglary, rape, and aggravated criminal sodomy. In the course of the investigation of these alleged crimes, the State obtained a substantial amount of physical evidence, including blood and saliva samples and bodily fluid swabs from Goldsmith and the victim. Subsequent testing of selected items revealed no seminal fluid or blood which connected Goldsmith to the crime or the victim to items discovered in Goldsmith's residence. A stipulation to this effect was read to the jury. Nevertheless, the jury convicted Goldsmith of all charged crimes.

Following sentencing, Goldsmith filed a motion for DNA testing. In the motion, Goldsmith alleged that physical evidence was seized which the laboratories of the Kansas Bureau of Investigation

were unable to analyze but which the Federal Bureau of Investigation could analyze. Goldsmith alleged such physical evidence, when analyzed, would prove exculpatory. The district court summarily denied Goldsmith's request for DNA testing without explanation.

In his direct appeal to this court, Goldsmith raised the issue of DNA testing. This court did not grant any relief because Goldsmith had not identified the district court's ruling with respect to the DNA testing in his notice of appeal. See *State v. Goldsmith*, No. 82,065, unpublished opinion filed April 28, 2000, slip op. at 6. Our Supreme Court denied review on July 13, 2000.

On August 21, 2000, Goldsmith filed another 1507 motion. In this motion a claim for DNA testing was again made. In addition, a motion for DNA testing was filed. The district court denied Goldsmith's requested relief for DNA testing, citing *Mebane v. State*, 21 Kan. App. 2d 533, 902 P.2d 494, *rev. denied* 258 Kan. 859 (1995), and finding the State's evidence of guilt was not weak. Goldsmith again appealed this decision to this court. Affirming the summary dismissal of Goldsmith's claims, this court said of the DNA testing issue:

"In his direct appeal, this court addressed Goldsmith's claim that there was insufficient evidence for his conviction, as well as his claim for ineffective assistance of counsel and his request for DNA testing. This court affirmed Goldsmith's convictions, finding that the evidence in support of the convictions was overwhelming and that Goldsmith's trial counsel was effective. In affirming the trial court's denial of Goldsmith's motion for DNA testing, this court found that Goldsmith had acquiesced in his trial counsel's strategy to emphasize the State's lack of physical evidence connecting him to the crime.

"Supreme Court Rule 183(d) (2001 Kan. Ct. R. Annot. 210) provides that the court 'shall not entertain a second or successive motion for relief on behalf of the same prisoner' when the same ground(s) for relief was determined adversely to the applicant in a prior application, the prior determination was on the merits, and the ends of justice would not be served by reaching the merits on subsequent application.

"The trial court and this court have already considered and rejected Goldsmith's motion for DNA testing. The prior determination was made on the merits, and the ends of justice would not be served by reaching the merits again. Goldsmith raises several issues in his analysis of the trial court's denial of his current motion for DNA testing. However, Goldsmith fails to address the fundamental issue of

why the appellate court should consider the issue again in light of Supreme Court Rule 183(d).

"Goldsmith's argument for DNA testing relies on *Mebane v. State*, 21 Kan. App. 2d 533, 902 P.2d 494 (1995). This case was published nearly 3 years before Goldsmith's crimes were committed. Thus, he could have argued *Mebane* before now. Accordingly, the trial court properly denied Goldsmith's motion for DNA testing." *Goldsmith v. State*, No. 86,692, unpublished opinion filed November 27, 2002, slip op. at 2-4.

Once again, our Supreme Court denied Goldsmith's petition for review of this court's decision.

Finally, Goldsmith filed the current action requesting DNA testing under K.S.A. 2004 Supp. 21-2512, on June 23, 2004. Treating the request as a motion brought under K.S.A. 2004 Supp. 60-1507, the district court summarily denied the motion, finding it was not timely filed within 1 year of the Kansas Supreme Court's denial of Goldsmith's petition for review in his last 1507 proceeding as required in K.S.A. 2004 Supp. 60-1507(f).

## Right to DNA Testing

The sole issue raised in this appeal concerns the district court's dismissal of Goldsmith's request for DNA testing under 21-2512 as untimely under 60-1507. This issue presents a question of statutory interpretation, which is subject to unlimited review. See *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003).

"(a) Notwithstanding any other provision of law, a person in state custody, at any time after conviction for murder as defined by K.S.A. 21-3401, and amendments thereto, or for rape as defined by K.S.A. 21-3502, and amendments thereto, may petition the court that entered the judgment for forensic DNA testing (deoxyribonucleic acid testing) of any biological material that:

(1) Is related to the investigation or prosecution that resulted in the conviction;

(2) is in the actual or constructive possession of the state; and

(3) was not previously subjected to DNA testing, or can be subjected to retesting with new DNA techniques that provide a reasonable likelihood of more accurate and probative results.

"(b)(1) The court shall notify the prosecuting attorney of a petition made under subsection (a) and shall afford the prosecuting attorney an opportunity to respond.

(2) Upon receiving notice of a petition made under subsection (a), the prosecuting attorney shall take such steps as are necessary to ensure that any remaining biological material that was secured in connection with the case is preserved pending the completion of proceedings under this section.

"(c) The court shall order DNA testing pursuant to a petition made under subsection (a) upon a determination that testing may produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced.

"(d) The cost of DNA testing ordered under subsection (c) shall be borne by the state or the petitioner, as the court may order in the interests of justice, if it is shown that the petitioner is not indigent and possesses the means to pay.

"(e) The court may at any time appoint counsel for an indigent applicant under this section.

"(f)(1) If the results of DNA testing conducted under this section are unfavorable to the petitioner, the court:

(A) Shall dismiss the petition; and

(B) in the case of a petitioner who is not indigent, may assess the petitioner for the cost of such testing.

(2) If the results of DNA testing conducted under this section are favorable to the petitioner, the court shall:

(A) order a hearing, notwithstanding any provision of law that would bar such a hearing; and

(B) enter any order that serves the interests of justice, including, but not limited to, an order:

(i) Vacating and setting aside the judgment;

(ii) discharging the petitioner if the petitioner is in custody;

(iii) resentencing the petitioner; or

(iv) granting a new trial.

(3) If the results of DNA testing conducted under this section are inconclusive, the court may order a hearing to determine whether there is a substantial question of innocence. If the petitioner proves by a preponderance of the evidence that there is a substantial question of innocence, the court shall proceed as provided in subsection (f)(2).

"(g) Nothing in this section shall be construed to limit the circumstances under which a person may obtain DNA testing or other postconviction relief under any other provision of law." K.S.A. 2004 Supp. 21-2512.

The scope of this statute has already been addressed on two separate occasions by our Supreme Court. See *State v. Denney*, 278 Kan. 643, Syl. ¶ 2, 101 P.3d 1257 (2004) (extending the scope of the statute to include aggravated criminal sodomy); *Bruner v. State*, 277 Kan. 603, 605, 88 P.3d 214 (2004). In *Bruner*, the movant had been convicted of first-degree murder and filed a 1507 motion, seeking DNA testing as well as alleging a number of trial errors. The *Bruner* court broadly construed Bruner's request for

DNA testing as a claim brought under K.S.A. 2004 Supp. 21-2512. See *Bruner*, 277 Kan. at 605.

Under the plain language of K.S.A. 2004 Supp. 21-2512(a), an individual who has been convicted of first-degree murder or rape may seek DNA testing as provided by the statute at any time following the conviction. The *Bruner* court reasoned that the exceptional circumstance requirement imposed by Rule 183(c)(3) (2005 Kan. Ct. R. Annot. 228) for motions brought under 60-1507 was not applicable.

Following similar reasoning, nothing within K.S.A. 2004 Supp. 21-2512 imposes a 1-year limitation on claims for DNA testing. Therefore, the district court erred in dismissing Goldsmith's request for DNA testing under K.S.A. 2004 Supp. 60-1507(f). The State acknowledges that, under *Bruner*, the district court should not have dismissed Goldsmith's request for DNA testing because of the 1-year limitations period in K.S.A. 2004 Supp. 60-1507(f). Nevertheless, the State argues the district court properly dismissed the request for DNA testing because the physical evidence seized in the investigation of the crime revealed no biological materials which connected Goldsmith in any manner to the crime. As a result, the State contends the defendant cannot establish that the physical evidence seized during the criminal investigation will produce any biological materials, which, in turn, prevents the defendant from establishing the existence of noncumulative, exculpatory evidence, warranting DNA testing. See K.S.A. 2004 Supp. 21-2512(c).

If a trial court reached a right and just result, the mere fact that it based its decision on erroneous reasoning does not mandate reversal for further proceedings. Rather, the reason given by the district court for its ruling is immaterial if the correct result was obtained by the ruling. See *State v. Graham*, 277 Kan. 121, 133, 83 P.3d 143 (2004). Nevertheless, from a review of the record on appeal, it is impossible for this court to conclude the district court reached the correct result in this case.

In *Bruner*, our Supreme Court noted that Bruner's conviction had not rested on physical evidence obtained from biological material but on circumstantial evidence. Yet, the court noted that law

enforcement had collected biological samples of the victim, even though the evidence was not used against the defendant at trial. The court then opined:

"K.S.A. 2003 Supp. 21-2512 does not require the prisoner to make specific allegations regarding how the DNA testing would produce noncumulative, exculpatory evidence. The statute merely requires the prisoner to allege that the evidence is related to the investigation or prosecution of his or her conviction, that the State has possession or constructive possession of the evidence, and that the evidence was not previously subjected to DNA testing or that it could be tested using new DNA testing techniques. K.S.A. 2003 Supp. 21-2512(a)." *Bruner*, 277 Kan. at 606.

The *Bruner* court then determined that Bruner's allegations merited a hearing and the appointment of counsel. The danger of Bruner's allegations leading to a mere "fishing expedition" was limited by the requirements of the statute. 277 Kan. at 606.

Here, the State articulates no basis for a different result in this case. Admittedly, on the few biological items tested by the State, evidence was admitted indicating that no seminal fluid or blood tied the defendant to the crime, and the jury subsequently convicted the defendant from circumstantial evidence of guilt. However, a vast amount of physical evidence was seized by the police in the underlying criminal investigation. The statute clearly provides the right to DNA testing of biological material that was not previously subjected to DNA testing, was related to the criminal investigation, and is currently in actual or constructive possession of the State. K.S.A. 2004 Supp. 21-2512(a).

As in *Bruner*, Goldsmith has alleged throughout the course of his postconviction proceedings that further DNA testing of the hair samples, the victim's underwear, and many other pieces of physical evidence would produce exculpatory evidence. As in *Bruner*, these allegations at least warranted a hearing and the appointment of counsel. The district court's summary dismissal of Goldsmith's request cannot be deemed correct for the wrong reason.

Reversed and remanded for appointment of counsel and an evidentiary hearing.