NOT DESIGNATED FOR PUBLICATION

No. 116,380

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JACKIE LANDRUM GOLDSMITH,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Cowley District Court; JOHN E. SANDERS, judge. Opinion filed July 21, 2017.
Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Ian T. Otte*, deputy county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., LEBEN and BRUNS, JJ.

*Per Curiam*:  Jackie Landrum Goldsmith appeals the district court's decision
denying his motion pursuant to K.S.A. 2016 Supp. 21-2512 for DNA testing related to his
rape conviction. Although we do not completely agree with the district court's reasons for
denying the motion, we affirm the district court's decision for the reasons stated herein.

This is Goldsmith's sixth appeal arising from his 1998 convictions of aggravated
kidnapping, aggravated burglary, rape, and aggravated criminal sodomy. The district
court sentenced Goldsmith to a controlling term of 1,116 months' imprisonment. In his
direct appeal to this court, Goldsmith raised the issue of DNA testing. This court did not

1

grant any relief because Goldsmith had not identified the district court's ruling with respect to the DNA testing in his notice of appeal. See *State v. Goldsmith*, No. 82,065, unpublished opinion filed April 28, 2000 (Kan. App.), slip op. at 6, *rev. denied* 269 Kan. 936 (2000) (*Goldsmith I*).

In August 2000, Goldsmith filed a K.S.A. 60-1507 motion requesting DNA testing, along with a separate motion for DNA testing filed in the criminal case. The district court denied Goldsmith's requested relief for DNA testing, finding the State's evidence of guilt was not weak. On appeal, this court affirmed the district court's ruling and held that Goldsmith's motion for DNA testing was successive and the issue had previously been rejected by this court. *Goldsmith v. State*, No. 86,692, unpublished opinion filed November 27, 2000 (Kan. App.), slip op. at 2-4 (*Goldsmith II*).

In 2004, Goldsmith filed another motion for DNA testing under K.S.A. 21-2512. Initially, the district court treated the motion as a K.S.A. 60-1507 motion, found it was not timely filed, and summarily dismissed it. However, this court found that the time limitations under K.S.A. 60-1507 do not apply to motions pursuant to K.S.A. 21-2512 and remanded the case to district court for further proceedings. *Goldsmith v. State*, 34 Kan. App. 2d 789, 793-94, 124 P.3d 516 (2005) (*Goldsmith III*).

On remand, the district court conducted a hearing and by agreement of the parties, ordered 35 items to be tested for DNA. However, the Kansas Bureau of Investigation (KBI) tested only one item, a pair of Goldsmith's blue sweatpants. The DNA profile was consistent with a mixture of Goldsmith and the victim. As a result, the KBI decided that additional testing was unnecessary. The district court ruled without a hearing that the KBI had sufficiently complied with the order for testing. Goldsmith appealed and both this court and the Kansas Supreme Court reversed. The Kansas Supreme Court found that the KBI could not unilaterally stop testing ordered by the district court; rather, the State

2

should have sought to amend the district court's order based on the initial results. *Goldsmith v. State*, 292 Kan. 398, 403-04, 255 P.3d 14 (2011) (*Goldsmith IV*).

On remand, after conducting an evidentiary hearing on March 2, 2012, the district court amended its original order and found that no additional testing was necessary; that finding was affirmed on appeal. *Goldsmith v. State*, No. 108,369, 2013 WL 4730157 (Kan. App. 2013), *rev. denied* 299 Kan. 1269 (2014) (*Goldsmith V*). At the hearing in district court, a KBI analyst testified that the possibility of two random persons in the community generating a DNA profile as obtained from Goldsmith's sweatpants was "1 in 9 million in the Caucasian database." *Goldsmith V*, 2013 WL 4730157, at *3. In denying Goldsmith's request for DNA testing of the additional 34 items, the district court noted that "even if the odds were not 1 in 9 million . . . it did not change the fact the victim testified Goldsmith sat on her bed, under a light, for 10 or 20 minutes . . . [and] the victim was able to get a good look at Goldsmith." 2013 WL 4730157, at *3. The district court granted the motion to terminate testing because the results of the testing on the sweatpants were "'profoundly unfavorable'" to Goldsmith, and, even if they were not, the "'other supporting evidence in the case would show that there would be little question that the defendant is guilty.'" 2013 WL 4730157, at *3. On appeal, this court found that the "district court properly concluded there was no need for additional testing as the one item tested was 'profoundly unfavorable' to Goldsmith pursuant to K.S.A. 21-2512(f)(1)." 2013 WL 4730157, at *5.

On August 19, 2014, Goldsmith filed another motion under K.S.A. 21-2512 for additional DNA testing at the State's expense. The district court appointed counsel for Goldsmith, who subsequently filed a supplemental motion for DNA testing and a brief in support. Goldsmith's supplemental motion listed 12 separate items for DNA testing. He asserted that additional methods of DNA testing were available, namely the STR amplification Profiler Plus and cofiler kits. Goldsmith also asserted that he should be entitled to conduct his own independent testing of each item.

3

The district court held a hearing on September 16, 2015. Goldsmith testified in support of the motion. After hearing arguments of counsel, the district court denied Goldsmith's motion for additional DNA testing at the State's expense. The district court noted that the court's previous denial of additional DNA testing was "appealed and affirmed by the Court of Appeals, and reviewed by the Kansas Supreme Court." The district court found that it did not think "the intent of [the] statute is to just allow someone to just over and over and over again bring this matter up in front of the Court. I think it's one, and [you're] done." The district court advised Goldsmith that he was free to have DNA testing done at his own expense. The district court subsequently filed a journal entry denying Goldsmith's motion. Goldsmith filed a notice of appeal.

On appeal, Goldsmith contends that the district court erred in denying his motion for additional DNA testing. Goldsmith argues that K.S.A. 21-2512 does not limit motions for DNA testing to one as the district court suggested. Goldsmith maintains that the district court should not have focused on the number of the motions he previously had filed but instead the court should have analyzed whether additional testing would produce "noncumulative, exculpatory evidence" relevant to Goldsmith's claim of innocence.

The State contends that the district court properly denied Goldsmith's motion pursuant to K.S.A. 21-2512. The State first notes that the new method of DNA testing Goldsmith proposes is the same method that was used in the previous testing of the sweatpants. As for Goldsmith's request to have additional items tested, the State maintains that this issue has been litigated and any such claim is "barred by res judicata." Alternatively, the State argues that even if the district court's "one and done" statement is not correct in every case, it was correct as applied to Goldsmith in this instance.

The resolution of Goldsmith's claim is controlled by K.S.A. 2016 Supp. 21-2512. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

4

K.S.A. 2016 Supp. 21-2512 states in relevant part:

"(a) Notwithstanding any other provision of law, a person in state custody, at any time after conviction . . . for rape as defined by K.S.A. 21-3502, prior to its repeal, or K.S.A. 21-5503, and amendments thereto, may petition the court that entered the judgment for forensic DNA testing (deoxyribonucleic acid testing) of any biological material that:

(1) Is related to the investigation or prosecution that resulted in the conviction;

(2) is in the actual or constructive possession of the state; and

(3) was not previously subjected to DNA testing, or can be subjected to retesting with new DNA techniques that provide a reasonable likelihood of more accurate and probative results.

. . . .

"(c) The court shall order DNA testing pursuant to a petition made under subsection (a) upon a determination that testing may produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced."

We must focus on the language of K.S.A. 2016 Supp. 21-2512 in order to resolve whether the district court erred in denying Goldsmith's motion for additional DNA testing. As the State points out in its brief, the statute contemplates two scenarios for testing. First, items "not previously subjected to DNA testing" are subject to a request for testing under the statute. K.S.A. 2016 Supp. 21-2512(a)(3). Second, items that have been previously tested "can be subjected to retesting with new DNA techniques that provide a reasonable likelihood of more accurate and probative results." K.S.A. 2016 Supp. 21-2512(a)(3). We will review these two scenarios in reverse order as to Goldsmith's motion.

One way for Goldsmith to garner new testing is if "new DNA techniques" are available "that provide a reasonable likelihood of more accurate and probative results." K.S.A. 2016 Supp. 21-2512(a)(3). Goldsmith asserted in his supplemental motion that new methods of DNA testing were available, specifically, the "STR amplification Profiler

5

Plus and cofiler kits." However, as the State points out in its brief, a review of record shows that these are not new techniques and in fact both "STR amplification kit, Profiler Plus" and "STR amplification kit, Cofiler" were used in the testing of the sweatpants conducted pursuant to Goldsmith's original motion under K.S.A. 21-2512. There is no reason to believe that additional testing using the same forensic methods would "provide a reasonable likelihood of more accurate and probative results." K.S.A. 2016 Supp. 21-2512(a)(3). Thus, Goldsmith cannot garner new testing through this statutory basis.

Goldsmith is also allowed to request testing of items "not previously subjected to DNA testing." K.S.A. 2016 Supp. 21-2512(a)(3). It is true that only one physical item, Goldsmith's sweatpants, was ever subjected to DNA testing. The additional 12 items that Goldsmith now wants to be analyzed have not previously been subjected to DNA testing; thus, these items are subject to a request for testing under the statute.

As previously discussed, the DNA profile obtained from Goldsmith's sweatpants was consistent with a mixture of Goldsmith and the victim. At the hearing on March 2, 2012, a KBI analyst testified that the possibility of two random persons in the community generating a DNA profile as obtained from the sweatpants was 1 in 9 million in the Caucasian database. At the prior hearing, Goldsmith sought to have additional items subjected to DNA testing. However, the request was denied by the district court and that decision was affirmed on appeal. *Goldsmith V*, 2013 WL 4730157, at *5. Now, Goldsmith is making the very same request to have additional items subjected to DNA testing even though that request previously has been denied by the courts.

The State contends that Goldsmith's request for additional DNA testing is successive and is "barred by res judicata." Whether the doctrine of res judicata applies is an issue of law over which appellate courts employ plenary review. *Cain v. Jacox*, 302 Kan. 431, 434, 354 P.3d 1196 (2015).

6

"In Kansas, there are four requirements to apply res judicata: (1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity in the quality of persons for or against whom claim is made. [Citation omitted.] In other words, '"(1) same claim; (2) same parties; (3) claims were or could have been raised; and (4) a final judgment on the merits."' [Citations omitted.]" *State v. Robertson*, 298 Kan. 342, 344, 312 P.3d 361 (2013).

The State may be correct in asserting that Goldsmith's request for additional DNA testing is barred by the doctrine of res judicata. However, we believe that the law of the case doctrine is more applicable here. "The law of the case doctrine prevents a party from relitigating an issue already decided on appeal in successive stages of the same proceeding." *State v. Parry*, 305 Kan. 1189, 1189, 390 P.3d 879 (2017). The purpose of this doctrine is "'"to avoid indefinite relitigation of the same issue, to obtain consistent results in the same litigation, to afford one opportunity for argument and decision of the matter at issue, and to assure the obedience of lower courts to the decisions of appellate courts.'" [Citations omitted.]" 305 Kan. at 1194. Kansas courts have applied the law of the case doctrine in various scenarios. For example, in a second appeal brought in the same case, the first decision is the settled law of the case and any questions resolved in the first appeal will not be reconsidered in the second appeal. 305 Kan. at 1195.

The law of the case doctrine is similar to the doctrine of res judicata, but the former applies to a second appeal or a remand from the same case, while the latter applies to a second action arising from the same facts or circumstances against one of the original parties to the suit. *State v. Kleypas*, 305 Kan. 224, 244, 382 P.3d 373 (2016), *cert denied* 137 S. Ct. 1381 (2017). The application of the doctrine presents a legal question that is determinative of the case, so it can be raised by an appellate court *sua sponte*, or for the first time on appeal. *Parry*, 305 Kan. at 1193. Whether the doctrine applies is purely a legal question over which an appellate court has unlimited review. 305 Kan. at 1194.

In his supplemental motion filed in district court, Goldsmith listed 12 separate items for DNA testing that have not previously been subjected to testing. However, this is the same request that was litigated and resolved in *Goldsmith V*. Although K.S.A. 2016 Supp. 21-2512(a)(3) allows for testing of items "not previously subjected to DNA testing," Goldsmith is now attempting to relitigate the same issue that was resolved against him in district court and in his prior appeal. The prior ruling that Goldsmith is not entitled to additional DNA testing at the State's expense, absent some change in circumstances, is the law of Goldsmith's case.

There is no provision under K.S.A. 2016 Supp. 21-2512 that expressly bars successive motions for DNA testing. In fact, K.S.A. 2016 Supp. 21-2512(a)(3) contemplates successive motions under some circumstances. Thus, we disagree with the district court's blanket statement in denying Goldsmith's motion because "it's one and [you're] done." The district court did not properly analyze Goldsmith's motion under the provisions of the statute. However, under the facts of this particular case, Goldsmith was not entitled to relitigate the same issue about DNA testing that previously had been decided against him; Goldsmith has not raised any substantial new argument for testing these items beyond what was claimed and decided against him previously. Ultimately, Goldsmith failed to establish that additional DNA testing might produce "noncumulative, exculpatory evidence" relevant to his claim that he was wrongfully convicted of rape. See K.S.A. 2016 Supp. 21-2512(c). For this reason, we conclude that the district court did not err in denying Goldsmith's motion. See *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015) (if district court reaches the correct result, its decision will be upheld even though it relied upon the wrong ground or assigned erroneous reasons for its decision).

Affirmed.